**J. David LEONARD, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA,
et al., Appellees.**

**No. 98-CV-763.**

District of Columbia Court of Appeals.

Argued Sept. 24, 1999.

Decided March 29, 2002.

---

John W. Karr, with whom Theodore S. Allison, Washington, DC, was on the brief, for appellants.

Mary E. Pivec, Washington, DC, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, Lutz Alexander Prager, Assistant Deputy Corporation Counsel, and Stephen C. Taylor, General Counsel, were on the brief, for appellees.

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

WAGNER, Chief Judge.

Appellants appeal from a decision of the trial court granting appellees' motion to dismiss their claims for failure to state a cause of action for injunctive and other relief arising out of their discharge from employment with the District of Columbia government.[1] Appellants sued for unlawful termination, alleging that they were career civil service employees who had been terminated from their employment without cause, prior notice or due process and in violation of their rights under the Comprehensive Merit Personnel Act of the District of Columbia (CMPA), D.C.Code § 1–601.1 *et seq.* They also alleged that the Chief Financial Officer (CFO) of the District made false, malicious, reckless and defamatory public declarations that they were incompetent.[2] The trial court concluded that appellants' civil service status had been converted to an "at-will" employment by section 152 of the Omnibus Consolidated Rescission and Appropriations

---

1. Appellants are J. David Leonard, Sharon Downs, Mona Gnoleba, Wilhelmina Bell, Andrew Jackson, Mariacarmen Centeno, Madeline E. Dance, Charmain Green, Lorna Hamilton, Baleria Alford and Rosa Anderson.

2. Appellants alleged, among other things, that they "have little or no access to other employment because their reputations and employabilities have been stigmatized and damaged by [appellees'] actions in unlawfully terminating their employment and in using false and defamatory excuses for doing so." They

claimed entitlement to receive "expungement and public repudiation of all defamatory material and derogatory statements made and published by [appellees] about [them]...." Appellants contended that the Office of Employee Appeals (OEA) decision was based on the erroneous conclusion that there were no disputed issues of fact and that they were not given the opportunity to present evidence that their terminations were the result of arbitrary, capricious and malicious action by appellees.

Act of 1996 (OCRA Act) and that the CFO acted lawfully within his broad grant of authority under that Act. The trial court also rejected appellants' constitutional challenges to the OCRA Act and dismissed their complaint. Appellants argue for reversal on the grounds that: (1) the complaint alleged a justiciable claim that their firings were motivated by bias, political and other unlawful reasons; (2) section 152 did not convert their career status to "at-will" employment; (3) they were terminated in a manner which impugned their reputations thereby requiring a due process "reputation hearing"; and (4) the statute, as applied, unconstitutionally deprived them of procedural and substantive due process. We hold that the OCRA Act implicitly repealed appellants' career service status and converted them to "at-will" employees subject to discharge without the benefit of the procedures specified in the CMPA. Concluding that the trial court erred in dismissing appellants' defamation-based claim, we reverse for further proceedings as to that count. Otherwise, we affirm the trial court's decision.

## I.

### Factual and Procedural Background

Prompted by concern for a fiscal crisis in the District of Columbia, Congress enacted the D.C. Financial Responsibility and Management Assistance Act (Financial Responsibility Act), Public Law 104–8, on April 17, 1995, which placed various governmental functions under the Financial Responsibility and Management Assistance Authority (commonly referred to as the "Control Board"). The Financial Responsibility Act placed the personnel and functions of the Controller, Office of Information Services and the Department of Finance and Revenue under the direction and control of the CFO. Subsequently, Congress included in section 152 of the OCRA Act a provision for personnel in specified budget, accounting and financial management offices to be appointed by and to serve at the pleasure of the CFO. Thereafter, without advance notice to appellants, the CFO fired appellants, all of whom had been employed in the covered financial operations.

Appellants first challenged their terminations with the Office of Employee Appeals (OEA), claiming that the CFO violated their merit protection rights under the CMPA. Consistent with the position of the CFO, the OEA concluded that appellants had been converted to "at-will" employees by section 152 of the OCRA Act, which had suspended any procedural rights they might have had under the CMPA. Prior to the conclusion of the proceedings before the OEA, appellants filed their initial complaint with the Superior Court seeking injunctive relief and damages. In their complaint, appellants contended that since the CFO claimed that their appeals to the OEA were a legal nullity in light of controlling legislation, attempts to exhaust administrative remedies would be futile. They alleged unlawful discharge from employment with the District where each had been a permanent career service employee. Appellants alleged that they had performed satisfactorily or better, having received performance evaluations ranging from satisfactory to excellent or outstanding. They alleged, and it is not disputed, that prior to notifying them that they would be terminated, the CFO issued a press release stating his "intention to dismiss a number of employees who clearly lack the skills to perform their job functions and/or have not demonstrated the level of professional commitment required in this new environment of performance and accountability." Appellants further alleged that these statements were false and made maliciously and recklessly and with-

out regard as to their truth or falsity. Appellants also filed a motion for preliminary injunction, contending that they were being irreparably harmed as a result of their unlawful terminations from government service. In that motion, appellants challenged: (1) section 152 of the OCRA Act as unconstitutional on its face and as applied to them because it arbitrarily deprived a small group of employees of property rights conferred by the CMPA; (2) section 152 is unrelated to any legitimate objective of Congress and violates appellants' substantive due process rights; (3) the CFO exceeded his authority under section 152 of the OCRA Act; (4) section 152 does not render them "at-will" employees; and (5) public assertion by the CFO that appellants were incompetent constitutes an unconstitutional deprivation of liberty without due process of law.

After appellants filed their original complaint, the OEA issued a decision holding that section 152 made them "at-will" employees at the time the CFO terminated them, and therefore, they were not entitled to the protections of the CMPA.[3] Appellants then filed an amended complaint reasserting the claims set forth in the original complaint and further seeking review of the OEA's decision on the ground that it was erroneous as a matter of law and that factual disputed issues precluded summary disposition. The District and the CFO filed a motion to dismiss the amended complaint for failure to state a cause of action upon which relief may be granted. The trial court affirmed the decision of the OEA, denied appellants' motion for prelim-

inary injunction and granted the District's motion to dismiss the remaining claims pursuant to Super. Ct. Civ. R. 12(b)(6) for failure to state a cause of action upon which relief can be granted. The trial court agreed with the OEA that section 152 of the OCRA Act converted appellants to "at-will" employees, thereby divesting them of any pre-termination procedural rights or rights to be terminated only for cause under the CMPA. The trial court also rejected appellants' claims that: (1) section 152 cannot withstand constitutional scrutiny because of the small percentage of employees discharged; and (2) the CFO's press statements about the reason for their terminations touched any protected liberty interest which might give rise to a due process "reputation" hearing. Further, the court rejected their substantive due process challenge to the statute.[4]

## II.

### A. Due Process and Property Interest

Appellants argue that the trial court erred in rejecting their claim that the firings infringed on their due process rights. They contend that they have a property interest by virtue of their right to continued employment under the CMPA which could not be taken away without procedural due process. In order to invoke the Fifth Amendment's procedural due process protections, an employee must show that a protected liberty or property interest is implicated. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92

3. At that time, under the CMPA, career service employees were terminable only for cause in accordance with procedures which provide notice and an opportunity to be heard before termination. D.C.Code § 1–617.1(b) (1992 Repl. ed.).

4. In the trial court, appellants' case was consolidated with *Gaines v. District of Columbia,*

et al., No. 97–MP–5, which remained pending at the time the trial court finalized its ruling in the present action. Concluding that there was no reason for this case to await disposition of the *Gaines* case, the trial court granted appellants' motion for entry of judgment pursuant to Super. Ct. Civ. R. 54(b) in order to allow appellants to proceed with their appeal.

S.Ct. 2701, 33 L.Ed.2d 548 (1972). To trigger due process protection in the area of public employment, an employee must "have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. For example, tenure and contract provisions have been recognized as property interests of the type safeguarded by due process protections. *Id.* at 576–77, 92 S.Ct. 2701 (citing *Slochower v. Board of Educ.*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) and *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)). The requisite property interests for due process protections are "created and their dimensions are defined by existing rules ... that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. Our first inquiry, therefore, is whether appellants were deprived of a protected interest. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). If so, the inquiry becomes what process is due. *Id.*

Appellants argue that they have a protected property interest in their employment which could not be taken away without according them due process. That process, they contend, is prescribed by the CMPA, which provides for the discharge of career civil service employees only for cause and after notice and an opportunity to respond to the charges. The District and the CFO do not challenge that the CMPA afforded such protections to career civil service employees prior to the enactment of the OCRA Act. *See* D.C.Code §§ 1–617.1 & –617.3 (1992 Repl. ed.). They argue, however, that appellants have no protection under the CMPA because by the time the CFO terminated them, their career civil service status had been changed to "at-will" employment by operation of law. The District and the CFO contend that section 152 of the OCRA Act operated to convert appellants' employment status to "at-will" status and divested them of any protected property interest.

Section 152 of the OCRA Act expanded the CFO's authority by transferring all budget, accounting and financial management personnel in the executive branch of the District government from the Mayor's authority to the CFO's authority.[5] It also provides that employees in these financial offices "shall be appointed by, and shall *serve at the pleasure of* ... the Chief Financial Officer." Pub.L. No. 104–134, Sec. 152(a), 110 Stat. 1321–102 (1996) (emphasis added). The District contends that the language, "serve at the pleasure of," is synonymous with employment "at-will." In support of this argument, the District relies upon the Supreme Court's opinion in

---

**5.** Section 152 of the OCRA Act provides:

Notwithstanding any other provision of law, for the fiscal years ending September 30, 1996 and September 30, 1997—

(a) the heads and all personnel of the following offices, together with all other District of Columbia executive branch accounting, budget, and financial management personnel, shall be appointed by, shall serve at the pleasure of, and shall act under the direction and control of the Chief Financial Officer:

The Office of the Treasurer.

The Controller of the District of Columbia.

The Office of Budget.

The Office of Financial Information Services.

The Department of Finance and Revenue. The District of Columbia Financial Responsibility and Management Assistance Authority established pursuant to Public Law 104–8, approved April 17, 1995, may remove such individuals from office for cause, after consultation with the Mayor and the Chief Financial Officer.

Pub.L. No. 104–134, Sec.152, 110 Stat. 1321–102 (1996).

*Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684(1976). However, *Bishop* is not controlling because it did not purport to interpret similar statutory language. *See Bishop*, 426 U.S. at 344–45, 96 S.Ct. 2074. In *Bishop*, the Supreme Court accepted, without independent examination, an interpretation by the United States District Court of a city ordinance that petitioner's position was held "at the will and pleasure of the city." *Id.* at 345–46, 96 S.Ct. 2074. The ordinance at issue provided for the discharge of a permanent employee for failure to perform the work up to standard, negligence, or inefficient or negligent performance of duties. *Id.* at 344, 96 S.Ct. 2074. Petitioner argued that the ordinance foreclosed discharge for any other reason, and therefore, conferred tenure on permanent employees. *Id.* The Supreme Court stated that the statute could be construed either way, but declined to disturb the District Court's interpretation of the state-law issue where the interpretation was tenable, derived some support from the North Carolina Supreme Court and was accepted by the Fourth Circuit. *Id.* at 345–47, 96 S.Ct. 2074.

The District also relies on *Hall v. Ford*, 272 U.S.App. D.C. 301, 856 F.2d 255 (1988). While reliance on *Hall* is somewhat better placed, it is not dispositive of the issue. In *Hall*, the employee claimed that his dismissal from employment deprived him of a property interest without due process. *Id.* at 311, 856 F.2d at 265. However, Hall admitted that his former position was in the "excepted service" which, under District of Columbia law, provided no job tenure or protection. *Id.* Pertinent to our discussion, the court observed that Hall admitted signing an agreement providing that he would serve at the pleasure of the University's president, which "presumptively [made] Hall an at-will employee with no legitimate expectation of continued employment." *Id.* at

311–12, 856 F.2d at 265–66 (citation omitted). That presumption does not foreclose another meaning in the context of the statute under consideration. Therefore, we review the language at issue here.

■■■ In determining the meaning of the OCRA Act's "at the pleasure of" provision, we are presented with an issue of statutory construction for which the rules are well established. The construction of a statute raises a question of law which this court reviews *de novo*. *District of Columbia v. Morrissey*, 668 A.2d 792, 796 (D.C.1995) (citing *Office of People's Counsel v. Public Serv. Comm'n*, 520 A.2d 677, 681 (D.C.1987)) (other citation omitted). The language of a statute should be construed according to its plain meaning in its usual sense. *Id.* at 797 (citing *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) (other citation omitted)). Where that meaning cannot be gleaned from the plain language of the statute, we look to legislative history to discern the meaning of the statute. Here, appellants contend that the meaning of the "at the pleasure of" language does not stand alone, but must be construed with reference to other pertinent provisions within the same statute. When the interaction between several statutory provisions is in question, " 'the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.' " *District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C.1998) (quoting *Morrissey*, 668 A.2d at 798) (other citations omitted). With these principles in mind, we review the statutory provision at issue.

■■■ Section 152 of the OCRA Act provides that certain financial employees serve "at the pleasure of" the CFO. In interpreting this statutory language, the words are generally given their ordinary

meaning. *Morrissey, supra,* 668 A.2d at 797. This language customarily or presumptively means at the will of the employer. *See Hall,* 272 U.S.App. D.C. at 311–12, 856 F.2d at 265–66; *see also Bishop, supra,* 426 U.S. at 345–46, 96 S.Ct. 2074. Referencing other portions of the statute, as appellants urge, only further supports appellees' argument that the statute means that employees in the listed categories were intended to serve at the pleasure of the CFO or to be "at-will" employees. Section 152 begins with the language, "[n]otwithstanding any other provision of law." Such language customarily evidences an intention of the legislature that the enactment control in spite of any earlier law to the contrary addressing the subject. *See Poole v. Kelly,* 293 U.S.App. D.C. 329, 332, 954 F.2d 760, 763 (citing *Winters v. Ridley,* 596 A.2d 569 (D.C.1991)).

In addition to the "serve at the pleasure of" language, section 152 states that the "District of Columbia Financial Responsibility and Management Assistance Authority [or Control Board] ... may remove such individuals from office *for cause, ....*" Pub.L. No. 104–134, Sec. 152(a), 110 Stat. 1321–102 (1996) (emphasis added). Importantly, the Chief Financial Officer's authority to dismiss the same employees is not similarly restricted. If Congress intended to limit or restrict the Chief Financial Officer's authority to dismiss the employees under his authority for cause, it could have included the same language that it prescribed for the Control Board, but it did not do so.

Although section 152 does not explicitly convert the career civil service employees into "at-will" employees, the effect of its enactment implicitly contradicts the force of the CMPA. "[I]f the two [acts] are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first...." *United States v. Tynen,* 11 Wall. 88, 78 U.S. 88–92, 20 L.Ed. 153 (1870). Although before the enactment of section 152 of the OCRA Act, the career civil service employees were covered under the CMPA and had a protected property interest in their jobs, section 152 effectively removed them from its protection. *See Alexis v. District of Columbia,* 44 F.Supp.2d 331, 344 (D.D.C.1999).

Appellants do not argue that Congress lacks the power to revoke rights that have been previously granted. Congress has plenary legislative authority for the District of Columbia.[6] This includes the power to establish personnel standards for the District government's personnel. However, appellants contend that since section 152 did not explicitly repeal the career service provisions of the CMPA that give career civil service employees the right to be terminated only "for cause," D.C. government financial employees were not converted to "at-will" employees.

Appellants are correct that implied repeals are not favored. *Rodriguez v. United States,* 480 U.S. 522, 524, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (other citations omitted). A later enacted statute "will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *United States v. Fausto,* 484 U.S. 439, 452–53, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (citing *Georgia v. Pennsylvania R. Co.,* 324 U.S. 439, 456–57, 65 S.Ct. 716, 89 L.Ed. 1051 (1945)) (other citations omitted). There-

---

**6.** Article I, Section VIII, Clause 17 of the United States Constitution gives Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of Government of the United States...."

fore, appellants argue that the OCRA Act can not be interpreted to deprive them of their rights under the CMPA.

The legislative history shows that Congress intended to reclassify District government financial employees for fiscal years 1996 and 1997 in order to address a fiscal crisis in the District. The Congressional Conference Committee which considered section 152 explained the purpose of the provision as follows:

> The conference action inserts a new section 152 effective during fiscal years 1996 and 1997 which clarifies certain duties and responsibilities of the Chief Financial Officer to enable the CFO to exercise his authority with the independence called for under Pub.L. 104–8 [District of Columbia Financial Management and Assistance Act].... The clarifying language places the directors of the Office of the Budget and the Department of Finance and Revenue as well as all other District of Columbia executive branch accounting, budget, and financial management personnel under the CFO's authority.... All of these individuals will be appointed by, serve at the pleasure of, and act under the direction and control of the CFO.

Joint Explanatory Statement of the Committee of Conference on the District of Columbia at 4–5. For these reasons, we are persuaded that the legislature intended to convert the employees to "at-will" status.

### B. *Liberty Interest–Defamation Based Claim*

Appellants argue that even if they can demonstrate no property interest in continued employment entitled to due process protection, they have a defamation-based liberty interest claim. They contend that the CFO gave publicly false and defamatory reasons for their terminations which so damaged their reputations as to give rise to a liberty interest subject to due process protections.

Not every charge of defamation by the government is sufficient to create a liberty interest which triggers due process requirements. *See Orange v. District of Columbia,* 313 U.S.App. D.C. 279, 286, 59 F.3d 1267, 1274 (1995). Such interests will arise when employees are "terminated in a manner that 'stigmatizes' them by impugning their reputations or foreclosing their future employment opportunities." *Id.* (citing *Board of Regents v. Roth,* 408 U.S. 564, 572–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (other citations omitted)). This has been referred to as a "reputation-plus" standard. *Id.* (citation omitted). A distinction is made between statements which merely comment on job performance and those of an enduring nature which reflect adversely on the employee's personal characteristics. *Alexis, supra,* 44 F.Supp.2d at 339 (citing *Harrison v. Bowen,* 259 U.S.App. D.C. 304, 317, 815 F.2d 1505, 1518 (1987)). Charges of professional failures within the employee's power to correct are not considered to deprive the employee of an interest which triggers due process protections. *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630 (2d Cir.1996). By contrast, charges of dishonesty or immorality are of the type so stigmatizing that due process requires notice to the employee and an opportunity to refute the charges. *Id. See Board of Regents, supra,* 408 U.S. at 573, 92 S.Ct. 2701 (other citation omitted). Although not every governmental allegation of professional incompetence implicates a liberty interest, "[s]uch allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as

to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Donato,* 96 F.3d at 630–31. In order to establish a defamation-based liberty interest claim against a government employer, the employee must allege and prove that the government official made defamatory statements which impugned the employee's reputation and "that the defamation occurred in conjunction with an official governmental personnel action such as termination...." *Alexis, supra,* 44 F.Supp.2d at 338–39 (citing *Paul v. Davis,* 424 U.S. 693, 709–10, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). We examine appellants' complaint for sufficiency in light of these legal principles.

In their amended complaint, appellants alleged in support of their defamation-based claim that two days before they were fired, the CFO announced in a press release an "intention to dismiss a number of employees who clearly lack the skills to perform their job functions and/or have not demonstrated the level of professional commitment required in this new environment of performance and accountability." Further, they alleged that these statements were false and made recklessly and maliciously without affording them an opportunity to refute them. They claimed that they had all received satisfactory, excellent or outstanding performance evaluations before the terminations. They also alleged that they had little or no access to other employment because their reputations were stigmatized and damaged by the false and defamatory statements and unlawful terminations.

The District concedes, at least for purposes of the motion to dismiss, that the statements attributed to the CFO were made in the press, but argues that the statements were not defamatory or derogatory and that they are insufficient to create a liberty interest. We disagree. Attributing appellants' terminations to lack of skills to perform the job, as the government official is alleged to have done here, is essentially a charge of incompetence which implies some inherent incapability. *See Alexis, supra,* 44 F.Supp.2d at 339. This is the type of charge which carries the potential for disqualification from employment and which can support a due process claim. *See Donato, supra,* 96 F.3d at 630. "[A] government announcement that it has fired an employee for incompetence or because she can no longer do the job ... carries more potential for future disqualification from employment than a statement that the individual performed a job poorly." *Id.* (quoting *O'Neill v. City of Auburn,* 23 F.3d 685, 692 (2d Cir.1994)) (internal quotation marks omitted). Appellants have made all the allegations essential to their defamation-based claim. They have alleged that a government official made defamatory statements to the public concerning the reasons for their terminations which have the potential for, and which did impugn their reputations so as to impede their ability to secure future employment. *See id.* at 630–31.

The District also argues that the statements could not be stigmatizing because none of appellants was mentioned by name in the article. However, the requirement of public disclosure of the defamatory statement can be satisfied "where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers." *Donato, supra,* 96 F.3d at 631–32 (quoting *Brandt v. Board of Coop. Educ. Servs.,* 820 F.2d 41, 45 (2d Cir.1987)) (other citations omitted). It is not reasonable to infer, absent proof, that the reasons for discharging these government employees would not be placed in their personnel files and disclosed to pro-

spective employers. There has been no discovery at this stage of the proceeding which could disclose whether the publicly made statements were repeated in appellants' files. On a motion to dismiss for failure to state a claim, which we are considering here, we are testing only the legal sufficiency of the complaint and not whether appellants will prevail ultimately on the claim. *See Atkins v. Industrial Telecomm. Ass'n,* 660 A.2d 885, 887 (D.C.1995) (other citations omitted). Any ambiguities or uncertainties concerning sufficiency must be resolved in favor of the party bringing the claim. *Id.* (citation omitted). Accordingly, we conclude that this claim should not have been dismissed on a Rule 12(b)(6) motion.

### III.

*First Amendment Claims—Association and Political Activity*

Appellants argue that even assuming the effectiveness of section 152 to convert them to "at-will" employees and thereby eliminate their property interest in continued employment under the CMPA, they still have a justiciable claim based on infringement of their rights under the First Amendment. They contend that they were fired for improper personal and political reasons. They argue that the allegations in their complaint were sufficient to state a cause of action on each of these theories, and therefore, the trial court erred in dismissing the complaint for failure to state a cause of action under Super. Ct. Civ. R. 12(b)(6).

■ In reviewing an order dismissing a complaint under Rule 12(b)(6), we apply the same standard as the trial court. *Schiff v. American Ass'n of Ret. Persons,*

697 A.2d 1193, 1196 (D.C.1997). Dismissal is warranted only if, construing the complaint in the light most favorable to the non-moving party and assuming the factual allegations to be true for purposes of the motion, "it appears, beyond doubt, that the plaintiff can prove no facts which would support the claim." *Id.* (citing *Cauman v. George Washington Univ.,* 630 A.2d 1104, 1105 (D.C.1993) and *Aronoff v. Lenkin Co.,* 618 A.2d 669, 684 (D.C.1992)). Applying these principles to appellants' complaint, we examine these two claims.

Appellants' wrongful termination claim is based on allegations that the firings were motivated by "personal bias, whim, caprice, and/or political expediency, and/or for other unlawful reasons." They contend that these bare allegations were sufficient to state a claim under the First Amendment. Specifically, they contend that these allegations were sufficient to proceed on the theory that, in contravention of the First Amendment, the District terminated them because they criticized openly the handling of budgetary matters and associated with the administration of the Mayor of the District of Columbia and others who had different ideas about how to handle the District's fiscal crisis.

■ Generally, the government may not discharge an employee because of his or her exercise of First Amendment rights to freedom of speech or association. *See Elrod v. Burns,* 427 U.S. 347, 358–60, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).[7] Thus, it has been held that an "at-will" employee cannot be dismissed for exercising First Amendment rights. *See Orange, supra,* 313 U.S.App. D.C. at 284, 59 F.3d

---

7. In limited circumstances, not relevant here, some restraints on First Amendment interests are permitted. *See Elrod, supra,* 427 U.S. at 360, 372, 96 S.Ct. 2673 (patronage dismissals of policy-making employees permissible).

at 1272 (citing *Hall, supra,* 272 U.S.App. D.C. at 305, 856 F.2d at 259). A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) that the public employee was speaking on a matter of public concern; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *O'Donnell v. Barry,* 331 U.S.App. D.C. 272, 279, 148 F.3d 1126, 1133 (1998) (citations omitted); *Tao v. Freeh,* 307 U.S.App. D.C. 185, 188–89, 27 F.3d 635, 638–39 (1994). Appellants argue that the allegation of dismissal for improper political reasons is sufficient to show that they are making a claim under the First Amendment. They contend that they were entitled to offer proof at trial "that they were terminated because of their open criticisms of the handling of budgetary matters within their offices; for their associations with those who had different ideas of how to manage the financial crisis; for any allegiance to or association with the administration of the District's Mayor; and for any other reasons clearly implicating their First Amendment Rights." We disagree.

"Under Super. Ct. Civ. R. 8(a) and (e), a complaint is sufficient so long as it fairly puts the defendant on notice of the claim against him." *Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985) (other citation omitted); *see also Nelson v. Covington,* 519 A.2d 177, 178–79 (D.C.1986). Nevertheless, even under our liberal rules of pleading, the allegations in the amended complaint fail to alert the defense to the nature of claim as one for retaliatory dis-

charge for the appellants' exercise of their right to free speech under the First Amendment. There are no allegations in the complaint that appellants engaged in any protected activity. There are no allegations related to the elements of the action that appellants spoke out on a matter of public concern or that the District fired them wholly or partially because of it, let alone the other two elements of the cause of action. *See O'Donnell, supra,* 331 U.S.App. D.C. at 279, 148 F.3d at 1133. Appellants' failure to allege that the retaliatory action was related to speech of public concern is fatal to pleading this cause of action. *See id.* (citing *Tao, supra,* 307 U.S.App. D.C. at 188, 27 F.3d at 638–39) (citation omitted) ("If the speech is not of public concern, it is unnecessary to scrutinize the basis for the adverse action absent the most unusual circumstances."). Further, appellants failed to allege any facts from which it even may be inferred reasonably that they were fired because they engaged in speech of public concern.

The purpose of a motion under Rule 12(b)(6) "is to test the formal sufficiency of a statement of the claim for relief...." *Fraser v. Gottfried,* 636 A.2d 430, 432 (D.C.1994) (citation omitted). In the trial court, appellants did not provide sufficient facts for the court to make that determination. Appellants seem to recognize the insufficiency of their allegations to support a First Amendment claim. They suggest, therefore, that an amendment could have cured the defect in the complaint. However, appellants do not assert, and we find no indication in the record, that they sought to amend the complaint further to assert a First Amendment claim. Indeed, we find nothing in the record to indicate that the trial court was ever made aware that appellants claimed that they were fired because they exercised their rights to free speech and association. The general con-

clusory statements which appellants made in their complaint (*i.e.*, that the firings were motivated by "personal bias, whim caprice, and/or political expediency, and/or for other unlawful reasons") are simply inadequate to state a cause of action for exercising their First Amendment rights, particularly given the very specific nature of the action.

There is a split among the Federal circuits concerning whether the public concern requirement applies to claims of improper discharge based on associational claims. *Griffin v. Thomas*, 929 F.2d 1210, 1212–13 (7th Cir.1991) (citations omitted) (making public concern threshold requirement to such claims). *Cf. Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir.1993) (citations omitted) (Holding a public employee's claim of improper discharge for political affiliation not subject to the threshold public concern requirement). This court has not addressed the issue, and we need not do so here because, even absent the public concern requirement, appellants' vague and conclusory allegations are insufficient to state a claim. They have made no factual allegations that they engaged in any particular political activity or had other affiliations which motivated the District to fire them. Therefore, we conclude that the trial court did not err in dismissing appellants' claims under the First Amendment.

For the foregoing reasons, we reverse the decision of the trial court on appellants' defamation-based claim and remand for further proceedings consistent with this opinion. In all other respects, we affirm.

*So ordered.*