**DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, Appellant,**

v.

**FRATERNAL ORDER OF PO-LICE/METROPOLITAN POLICE DEPARTMENT LABOR COMMIT-TEE, Appellee.**

**No. 07–CV–919.**

District of Columbia Court of Appeals.

Argued Dec. 18, 2008.

Decided Jan. 28, 2010.

Bruce A. Fredrickson, Washington, with whom Cedar P. Carlton was on the brief, for appellant.

Marc L. Wilhite, Washington, with whom James W. Pressler was on the brief, for appellee.

Before RUIZ, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

■ The District of Columbia Public Employee Relations Board (PERB) appeals from an order of the Superior Court vacating an arbitrator's ruling (which PERB had affirmed) and remanding for arbitration to proceed on the merits of a grievance filed by members of the Fraternal Order of Police (FOP) against the Metropolitan Police Department (MPD).[1] The arbitrator had ruled (and PERB agreed) that FOP failed to file an arbitrable grievance because the provision of the Collective Bargaining Agreement (CBA or Agreement) that it alleged had been violated was concededly not in effect during the relevant time. Judge Alprin concluded, by contrast, that FOP's mistake in citing an inapplicable provision in the grievance— when MPD had no misapprehension from the grievance about what the claimed violation actually concerned (and the claimed violation was covered by another CBA provision that was in effect)—was no grounds to refuse arbitration of the dispute, and that such refusal would contravene the strong public policy favoring agreed-to arbitration. We affirm the Superior Court's judgment.

**I.**

The genesis of this matter is MPD's delay in paying overtime to police officers who worked a detail providing security and escort services during the clean-up and detoxification of a World War I era hazardous waste site in the Spring Valley section of the city. In May 2002, the affected police officers filed a grievance with MPD alleging that the CBA had been violated as follows:

> The Employer established an on-going overtime detail and solicited Officer Blue [The named grievant] and other members of the Bargaining Unit to volunteer to work overtime for cash payments. Since a period beginning on or about March 24, 2002, overtime hours, which were worked by the grievants for this detail, have not been paid.

> The Fair Labor Standards Act [FLSA] requires timely payments of compensation earned by covered employees. Officer Blue and the other grievants ... are covered by the [FLSA, which] is enforceable through the [CBA].

As remedies, the police officers sought the overtime payments due, "plus liquidated damages for all hours worked which [were] not compensated within two pay periods of the performance of work [for] which overtime payments are due."[2]

At the same time, though, under a heading entitled "Provision(s) of the Agreement

1. On September 13, 2007, the court issued an order directing appellant to show cause as to why this appeal should not be dismissed for lack of jurisdiction as having been taken from a non-final and non-appealable order. *See Warner v. District of Columbia Dep't of Employment Servs.*, 587 A.2d 1091 (D.C.1991). In response, appellant argued that the court has jurisdiction pursuant to one of the *Warner* exceptions because, according to appellant, the trial court committed clear error in ordering the remand. Upon consideration of appellant's argument, the court discharged the order to show cause on October 12, 2007,

pursuant to *District of Columbia v. Fremeau*, 869 A.2d 711 (D.C.2005). As discussed in the text, we disagree that the trial court clearly erred in ordering a remand to proceed with arbitration. A court necessarily has jurisdiction to decide its jurisdiction. *See, e.g., Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 757–58 (D.C.1993).

2. It appears to be undisputed that the overtime was eventually paid; thus, only the claim for liquidated damages covering the period of undue delay in payment remains to be arbitrated.

violated, misapplied or misinterpreted," the grievance cited:

> Article 30, Section 2 [of the CBA], which provides,

> To the extent that the Employer's present policies, procedures and practices equal or exceed the requirements of the [FLSA], those policies, procedures and practices shall remain in effect, except as otherwise provided herein.

FOP later conceded that this provision did not govern its grievance—indeed, that the provision was not in effect during the time of the events in dispute—and that the provision that should have been cited was Article 30, Section 1, namely that (as relevant here) "[c]ompensatory time and overtime shall be governed strictly by the [FLSA] for the term of this Agreement."

In response to the written grievance, the Executive Assistant Chief of Police wrote to the Chairman of FOP on May 29, 2002, "agree[ing] that members [of MPD] who volunteer to work overtime for cash payments shall be compensated in a timely manner and in accordance with the [FLSA]," and pointing out that the nonpayment in this case was the result of an administrative mishap but that steps were being taken "to compensate [the affected officers] properly." And on June 7, 2002, FOP wrote to Chief Ramsey demanding arbitration under the CBA, again explaining that its "Group Grievance demanded timely payment for overtime hours worked, plus liquidated damages, in accordance with the Fair Labor Standards Act." In succeeding correspondence, however, MPD pointed out supposed defects in the grievance, including, "most importantly, [that] the [CBA] language you cite as having been violated by [MPD] is not currently in effect."

When MPD continued to ignore or reject the claim for liquidated damages attributable to the delayed payment, FOP sought arbitration under the terms of the CBA. It acknowledged the "technical deficiency" in the grievance's mis-citation to an inoperative (and inapplicable) provision, but argued that this did not justify MPD's refusal to compensate the officers for the delay in payment of overtime concededly earned. MPD, however, adhered to its view that it could "not be found to be in violation of a non-provision of the [CBA]," namely, Article 30, Section 2.³ In his award, the arbitrator agreed with MPD's position and he did not reach the merits of the dispute over delayed overtime compensation, ruling instead that FOP had not filed a proper grievance because it "had incorrectly cited terms that were not terms of the [CBA], nor had they been terms of the [CBA] at any time during its lifetime," and that this mis-citation to an inoperative provision "does not appear to be a mere technicality" but rather "has every appearance of a substantive reality." On FOP's request for review of this ruling by PERB, the Board found nothing in the arbitrator's decision "contrary to law and public policy," see D.C.Code § 1–605.02(6) (2001), and upheld it, saying:

> FOP merely disagrees with the Arbitrator's conclusion of non-arbitrability. This is *not* a sufficient basis for concluding that the Arbitrator's Award is contrary to law and public policy.

## II.

■ We agree with Judge Alprin that PERB's ruling (and the underlying decision of the arbitrator) may not stand. Although the arbitrator recognized that

---

**3.** Article 30 of the CBA actually contains a second Section 2 which continued in effect. But, as Judge Alprin noted, that provision had nothing to do with application of the FLSA to the payment of compensation—it related only to the assignment of officers to staff certain pre-planned events.

MPD's assertion that "there [was] no grievance to deal with" because of the miscitation might appear to be a "merely technical" argument, he nonetheless concluded—without further explanation—that the error was "substantive" and thus deprived the grievance of legal validity. That conclusion is not substantiated by the Agreement itself and, equally important, elevates form over substance contrary to the public policy favoring arbitration where the parties have agreed to it. PERB's failure likewise to let this matter proceed to arbitration despite MPD's full awareness of the nature of FOP's grievance requires us to set aside its decision.

■■■ PERB, it is true, has only "limited authority to overturn an arbitral award." *Fraternal Order of Police v. District of Columbia Pub. Employee Relations Bd.*, 973 A.2d 174, 177 (D.C.2009). As relevant here, its authority to do so was "restricted ... to determining whether 'the award on its face [was] contrary to law and public policy.'" *District of Columbia Metro. Police Dep't v. District of Columbia Pub. Employee Relations Bd.*, 901 A.2d 784, 787 (D.C.2006) (citing D.C.Code § 1-605.02(6)) (italics omitted). And, we have emphasized that "a public policy alleged to be contravened 'must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.'" *Id.* at 789 (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). These limitations flow, in considerable part, from the fact that when parties have agreed to submit disputes to arbitration, they have "bargained for [the arbitrator's] construction of the contract [here the CBA]," not some other tribunal's. *Id.* (quoting *United*

*Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

MPD persuaded the arbitrator to find that no grievance was alleged because, under the CBA itself, "[o]nly an allegation that there has been a violation, misapplication, or misinterpretation of the terms of this Agreement shall constitute a grievance," Article 19(A), and FOP's grievance cited an inoperative or irrelevant (see note 3, *supra*) provision as having been violated. But, as we have seen, MPD from the start—through the Executive Assistant Chief of Police—recognized the actual nature of the grievance: "that members of [FOP] volunteered to work overtime ... and have not been paid ... in accordance with the [FLSA]." At no time since then has MPD denied that it knew FOP was in fact claiming violation of the FLSA's timely compensation requirement for overtime work,[4] incorporated into the CBA by Article 30, Section 1. By its terms, the CBA was meant "to establish a mechanism for the fair, expeditious and orderly adjustment of grievances," Article 19(A), and to that end, it specifies that "[t]he required information" to be stated in a written grievance—including what provision of the Agreement is claimed to have been violated—"must be furnished in sufficient detail to identify and clarify the material issue which forms the basis for the grievance." Article 19(C), Step 2, Subsection 2(g). MPD has not denied that the basis for FOP's grievance was set forth with enough "clari[ty]" to identify unpaid overtime as the matter at issue and enable MPD to respond.

■■ In these circumstances, the arbitrator's refusal to reach the merits of the dispute both frustrates the purpose reflected in the CBA to make "arbitration

---

**4.** *See, e.g.,* 29 C.F.R. § 778.106 ("[T]he requirements of [the FLSA] will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable.").

... the method of resolving grievances which have not been satisfactorily resolved" internally, Article 19(E), Section 1, and contravenes the "well defined and dominant" policy, *District of Columbia Metro. Police Dep't, supra,* 901 A.2d at 789, favoring arbitration of a dispute where the parties have chosen that course. Just as "Congress [has] declared a national policy favoring arbitration," *District of Columbia v. Greene,* 806 A.2d 216, 221 (D.C.2002) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)), so has the District of Columbia. *See, e.g., Masurovsky v. Green,* 687 A.2d 198, 201 (D.C.1996) ("Variously called a presumption, preference or policy, the rule favoring arbitration is identical under the D.C. Uniform Arbitration Act and the Federal Arbitration Act.") (citations omitted); *see also Cheek v. United Healthcare of Mid–Atlantic, Inc.,* 378 Md. 139, 835 A.2d 656, 668 (2003) (noting Federal and Maryland policies favoring enforcement of agreements to arbitrate); *Mission Residential, LLC v. Triple Net Props., LLC,* 275 Va. 157, 654 S.E.2d 888, 890 (2008) (noting Virginia's public policy favoring arbitration). Indeed, this preference for honoring parties' agreement to arbitrate disputes underlies the practical hands-off approach to review arbitrators' decisions, except in certain "restricted" circumstances. *District of Columbia Metro. Police Dep't, supra,* 901 A.2d at 787; *see Fraternal Order of Police, supra,* 973 A.2d at 177 n. 3 (arbitrator's interpretation merits deference *"because* it is the interpretation that the parties 'bargained for'" (emphasis added)). We do not read the arbitrator's refusal to reach the merits of FOP's claim as an interpretation of the CBA. Instead, his refusal to reach the merits because of a hyper technical defect that did not disguise the actual grievance and misled no one as to its nature, far from promoting the parties' bargain, erects an artificial barrier to resolution of the dispute in the manner they have chosen. This, PERB should have recognized, violates the clear policy in favor of enforcing arbitration agreements.

Accordingly, we affirm the Superior Court's order setting aside PERB's decision, and we remand to PERB for it to direct further proceedings before the arbitrator not inconsistent with our decision.

*So ordered.*