*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CV-0922

D.C. RETIREMENT BOARD, APPELLANT,

V.

OFFICE OF EMPLOYEE APPEALS, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-005159)

(Hon. Jonathan H. Pittman, Trial Judge)

(Argued December 18, 2025                    Decided March 19, 2026)

*William Coglianese*, with whom *Miguel Eaton*, *Eric Dreiband*, and *William J. Strench* were on the brief, for appellant.

*Donna Williams Rucker*, with whom *Michael R. Goldstein* was on the brief, for appellee Erie Sampson.

*Lasheka Brown* submitted a statement in lieu of brief for appellee Office of Employee Appeals.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant District of Columbia Retirement Board (DCRB) challenges an order of the Superior Court remanding DCRB's petition for review to appellee Office of Employee Appeals (OEA) for purposes of determining

OEA's jurisdiction to hear appellee Erie Sampson's appeal of DCRB's decision to terminate Ms. Sampson's employment. We reverse the trial court's order and remand the case to the trial court with directions to remand the case to OEA so that OEA can dismiss Ms. Sampson's challenge to her termination.

## I. Factual and Procedural Background

Except as noted, the following background information appears to be undisputed. DCRB is an independent agency of the D.C. government responsible for managing the retirement benefits of certain D.C. public employees. D.C. Code § 1-711(a), (b). Ms. Sampson was the General Counsel of DCRB for almost fourteen years.

## A. Administrative Proceedings

In September 2021, the Executive Director of DCRB received information that Ms. Sampson might have committed misconduct. DCRB placed Ms. Sampson on paid administrative leave and began an internal investigation. DCRB received a final investigative report in March 2022 that concluded that the allegations against Ms. Sampson had been substantiated. Specifically, the report concluded that Ms. Sampson had failed to appropriately investigate or inform DCRB of serious conflict-of-interest allegations regarding a prior Executive Director, in violation of

Ms. Sampson's duties to DCRB as General Counsel. Ms. Sampson denies the allegations of misconduct.

DCRB issued a notice of proposed removal in April 2022 based on the conclusions of the investigative report. The notice of proposed removal listed three types of misconduct specified as grounds for removal in Chapter 16 of Title 6 of the District of Columbia Municipal Regulations. *See generally* 6-B D.C.M.R. § 1600 et seq. Chapter 16 governs adverse actions against some D.C. public employees, but it does not apply to "[a]ttorneys in the Legal or Senior Executive Attorney Service." *Id.* § 1600.1, 1600.2(e). The notice of proposed removal also stated that Ms. Sampson had the right to challenge her proposed removal in front of a hearing officer. *See id.* § 1622.

Ms. Sampson requested review by a hearing officer. Ms. Sampson raised as a defense to DCRB's proposed termination the "ninety-day rule," pursuant to which a D.C. agency must initiate adverse action "no more than ninety (90) business days after the agency . . . knew or should have known of the performance or conduct supporting the action." 6-B D.C.M.R. § 1602.3(a). Ms. Sampson argued that DCRB knew of her alleged misconduct at the time she was put on administrative leave in October 2021, well over ninety business days before DCRB issued the proposed notice of removal in April 2022. The hearing officer disagreed, concluding that the

ninety-day rule was not triggered until months after Ms. Sampson was put on leave, when the agency investigator interviewed her. The hearing officer recommended removal of Ms. Sampson from her position. DCRB subsequently issued a final notice of removal that advised Ms. Sampson that she had the right to file an appeal with OEA. *See id.* § 1625.1(b) (employee who disputes adverse action under Chapter 16 may appeal to OEA); D.C. Code § 1-606.03(a) ("An employee may appeal . . . an adverse action for cause that results in removal . . . .").

Ms. Sampson filed an appeal with OEA challenging her termination, again raising the ninety-day rule, along with other claims of error. In her filings before OEA, Ms. Sampson indicated that she was employed in the Career Service. *See* D.C. Code § 1-608.01(a) (defining Career Service as "all persons appointed to positions in the District government, except persons appointed to positions in the . . . Legal Service"). DCRB's response did not deny that Ms. Sampson was a Career Service employee, and OEA's decision stated that Ms. Sampson had been in the Career Service. OEA agreed with Ms. Sampson that DCRB had violated the ninety-day rule. OEA therefore reversed Ms. Sampson's termination without addressing any additional arguments and ordered Ms. Sampson's reinstatement.

## B. Trial-Court Proceedings

DCRB petitioned the Superior Court for review of OEA's decision. In its petition, DCRB for the first time argued that OEA lacked jurisdiction to review Ms. Sampson's termination because only Career Service employees are entitled to OEA review of removal decisions, and Ms. Sampson had not been in the Career Service. Rather, DCRB contended, the Comprehensive Merit Personnel Act (CMPA), D.C. Code § 1-601.01 et seq., made Ms. Sampson a member of the Senior Executive Attorney Service within the Legal Service, to whom removal protections including the ninety-day rule did not apply. Ms. Sampson intervened in the case and opposed DCRB's petition. Responding to DCRB's argument that OEA lacked jurisdiction to review Ms. Sampson's termination, Ms. Sampson asserted, "Although a party can raise a jurisdictional challenge at any time during a legal proceeding,[] DCRB's jurisdictional challenge is wholly inconsistent with its own actions and legal filings that recognize Ms. Sampson as a Career Service attorney."

The trial court remanded the case to OEA. The trial court agreed with DCRB that if Ms. Sampson was a Legal Service employee, OEA would not have jurisdiction over Ms. Sampson's challenge to her removal, because Legal Service employees do not have the removal protections granted to Career Service employees by the CMPA. The trial court concluded, however, that the determination of whether

Ms. Sampson was in the Career Service or the Legal Service "require[d] the resolution of certain factual disputes." The trial court noted Ms. Sampson's contentions that her personnel records reflected that she was a Career Service employee and that DCRB had referred to her as a Career Service employee throughout the administrative proceedings. The trial court remanded to OEA so that the agency could determine its jurisdiction in the first instance.

### C. Proceedings in This Court

DCRB appealed from the trial court's remand order. This court ordered DCRB to show cause why the appeal should not be dismissed for having been taken from a nonfinal, non-appealable remand order. DCRB responded that the remand order was appealable because the trial court committed a clear error of law, which is an exception to the finality requirement. *See, e.g.*, *D.C. Pub. Emp. Rels. Bd. v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.*, 987 A.2d 1205, 1206 n.1 (D.C. 2010) (taking jurisdiction of appeal from trial-court remand order and noting that this court has jurisdiction to determine whether "the trial court committed clear error in ordering the remand"). Ms. Sampson argued that the appeal should be

dismissed. This court discharged the show-cause order but directed the parties to address the finality issue in their briefs.

Finally, Ms. Sampson filed a motion to strike portions of DCRB's reply brief. In the motion, Ms. Sampson argues that DCRB's reply brief impermissibly raises new arguments not included in DCRB's initial brief. DCRB opposed the motion.

## II.  Analysis

DCRB argues that the trial court committed a clear error of law by remanding the case for OEA to consider "factual disputes" because the D.C. Code unambiguously establishes as a matter of law that OEA does not have jurisdiction. We agree.

## A.  Jurisdiction

"This court generally has jurisdiction to review only agency orders or decisions that are final." *Rieger v. D.C. Dep't of Emp. Servs.*, 316 A.3d 459, 464 (D.C. 2024) (citation modified). "Ordinarily an order remanding the case to an administrative agency is not a final order." *Warner v. D.C. Dep't of Emp. Servs.*,

587 A.2d 1091, 1093 (D.C. 1991). There is an exception to the finality requirement, however, where the decision to remand was "a clear error of law." *Id.*

The parties propose different terms as synonyms for "clear" for purposes of the "clear error of law" exception. DCRB relies on the term "unmistakable." Ms. Sampson suggests the term "obvious," relying on the plain-error test for unpreserved trial-court errors in criminal cases. *See, e.g.*, Super. Ct. Crim. R. 52(b) (court may correct plain errors); Fed. R. Crim. Pro. 52(b) (same); *United States v. Olano*, 507 U.S. 725, 734 (1993) (for purposes of Fed. R. Crim. Pro. 52(b), "plain is synonymous with clear or, equivalently, obvious") (citation modified).

We need not resolve in this case whether there are meaningful differences for current purposes among the terms "clear," "unmistakable," and "obvious." As we will explain, we conclude that the remand order in this case rested on an error of law that would fall within any of those terms. We therefore take jurisdiction over this appeal.

## B. Merits

When deciding issues of statutory interpretation, "[w]e first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022) (citation modified).

"Statutory interpretation is a holistic endeavor." *Id.* (citation modified). "[W]e do not read statutory words in isolation; the language of surrounding and related paragraphs may be instrumental to understanding them." *Id.* (citation modified). "Generally, we will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result," although the plain meaning "may not be controlling . . . when there is a clearly expressed legislative intention to the contrary." *Yazam, Inc. v. D.C. Dep't of For-Hire Vehicles*, 310 A.3d 616, 623 (D.C. 2024) (citation modified).

We hold that the relevant provisions of the CMPA and DCRB's enabling statute, D.C. Code § 1-711, plainly establish that Ms. Sampson was an at-will employee not entitled to appeal to OEA to challenge her removal.

Subchapter VIII-B of the CMPA "established within the District government a Legal Service for the Council, independent agencies, and subordinate agencies." D.C. Code § 1-608.52. The CMPA also established "[a] Senior Executive Attorney Service . . . as part of the Legal Service." D.C. Code § 1-608.53(a). "Senior Executive Attorney Service position[s]" include "[a]ny attorney who is a General Counsel employed by an independent agency." D.C. Code § 1-608.51(3)(C). DCRB is an independent agency as defined by the CMPA. D.C. Code § 1-603.01(13) ("The term 'independent agency' means any board or commission

of the District of Columbia government not subject to the administrative control of the Mayor, including . . . the District of Columbia Retirement Board . . . .").  It is undisputed that Ms. Sampson was the General Counsel of DCRB.  It follows that Ms. Sampson by law had a Senior Executive Attorney Service position within the Legal Service.

Subchapter VIII of the CMPA created "the Career Service[,] which shall include all persons appointed to positions in the District government, *except* persons appointed to positions in the . . . *Legal Service*." D.C. Code § 1-608.01(a) (emphases added).  As a member of the Legal Service, Ms. Sampson was statutorily excluded from the Career Service.

The CMPA specifies that, unless a statute provides otherwise, "an appointment to the Senior Executive Attorney Service shall be at will employment." D.C. Code § 1-608.53(b).  Specifically, "[a] Senior Executive Attorney employed by an independent agency shall serve at the pleasure of the agency head, or as provided by statute for a term of years, subject to removal for cause as may be provided in the appointing statute."  D.C. Code § 1-608.53(f).  DCRB's enabling statute does not authorize the appointment of counsel for a term of years subject to removal for cause, and Ms. Sampson has not identified any other statute providing such authorization. *See generally* D.C. Code §§ 1-711 to -16.  As a Senior Executive

Attorney for an independent agency, Ms. Sampson served at the pleasure of the head of DCRB and could be terminated at will. *Cf. Leonard v. District of Columbia*, 794 A.2d 618, 625-27 (D.C. 2002) (concluding that enactment of statute providing that certain D.C. employees "serve at the pleasure of" supervisor converted those employees to at-will employees).

At-will employees are not entitled to removal protections. *See* D.C. Code § 1-606.03(a) (listing types of agency action subject to OEA appeal, including "an adverse action *for cause* that results in removal") (emphasis added); 6-B D.C.M.R. § 1600.2(e) (providing that D.C.M.R. chapter on adverse-action procedures, including the ninety-day rule, 6-B D.C.M.R. § 1602.3(a), does not apply to "[a]ttorneys in the Legal or Senior Executive Attorney Service"); *see also Leonard*, 794 A.2d at 622 (concluding that at-will employees were "subject to discharge without the benefit of the procedures specified in the CMPA"); *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 207 (D.D.C. 2013) ("Because [former employee] was an at-will [] employee . . . , she was not entitled to an OEA appeal before she was terminated.").

For the foregoing reasons, we conclude that Ms. Sampson was an at-will employee who had no right to appeal her termination to OEA. We are not persuaded by Ms. Sampson's arguments to the contrary.

First, Ms. Sampson argues that the CMPA requires attorneys to be "appointed" to the Legal Service before they can be Senior Executive Attorneys. Section 1-608.51(3)(C), however, states that "[*a*]*ny* attorney who *is*" a general counsel of an independent agency is a Senior Executive Attorney. D.C. Code § 1-608.51(3)(C) (emphases added). All that the CMPA requires for an attorney to be a Senior Executive Attorney is for that attorney to have one of the positions listed as a Senior Executive Attorney Service position. *See generally* D.C. Code § 1-608.51(3). We see no support in the applicable statutory provision for the idea that a person could hold the position of general counsel to an independent agency but could be viewed as not having been "appointed" to that position and thus could fall outside the Legal and Senior Executive Attorney Services.

Second, Ms. Sampson relies on regulations that she asserts require that some attorneys—though, notably, in her view, not DCRB attorneys—be hired by certain processes. *See, e.g.*, 6-B D.C.M.R. § 3601.6 (requiring that certain attorneys who are appointed to Senior Executive Service be so notified in writing). We need not address, however, whether those regulations apply to Ms. Sampson or were properly followed. Those questions are distinct from the question before us, which is whether applicable statutes establish that Ms. Sampson was in the Legal Service and Senior Executive Attorney Service. Even if it were accurate that the cited regulations suggest otherwise, "an arguable implication of a regulation cannot prevail over the

plain language of a statute." *Dist. Hosp. Partners, LP v. District of Columbia*, 290 A.3d 45, 50 (D.C. 2023); *see, e.g.*, *Riley v. Dep't of Emp. Servs.*, 258 A.3d 834, 846 (D.C. 2021) ("[E]xpress, mandatory [statutory] language overrides any regulation inconsistent with it.").

Third, Ms. Sampson argues that D.C. Code § 1-711 gives DCRB authority to place DCRB employees into the Career Service or the Legal Service as DCRB wishes, and that DCRB "consistently exercised its statutory authority by classifying [her] as a Career Service appointee." Section 1-711, however, expressly subjects DCRB staffing appointments to the pertinent provisions of the CMPA except one subsection that does not pertain to the placement of employees into services. Specifically, Section 1-711 provides that DCRB "may appoint any staff it considers necessary to carry out the responsibilities under this chapter. Except as provided under subsection (k) of this section, staff appointed by [DCRB] shall be subject to Chapter 6 of Title 1." D.C. Code § 1-711(g)(2)(A). Chapter 6 of Title 1 of the D.C. Code includes the previously discussed provisions that place the general counsels of independent agencies into the Legal and Senior Executive Attorney Services and make them at-will employees. D.C. Code §§ 1-606.03(a), -608.01(a), and -608.51 to -.53.

Section 1-711(k) provides that staff appointed by DCRB "shall not be subject to the provisions of subchapter XI of Chapter 6 of this title." Subchapter XI of Chapter 6 of Title 1 of the D.C. Code governs the "classification of all positions in the Career, Educational, Legal, Excepted, and the Management Supervisory Services" into "classes and grades" for purposes of determining compensation. D.C. Code § 1-611.01(a); *see generally id.* §§ 1-611.01 to -611.21. Thus, DCRB's authority to appoint staff is generally subject to the requirements of the CMPA, including subchapter VIII-B, except that DCRB may establish its own classification and compensation policy not limited to what is otherwise provided by subchapter XI of Chapter 6 of Title 1 of the D.C. Code.

Ms. Sampson argues, however, that the term "classification" in Section 1-711(k) gives DCRB authority to "classify" her as a member of the Career Service. We disagree. We do not read the term "classification" "in isolation," but rather rely on "the language of surrounding and related paragraphs" to understand its meaning. *In re Macklin*, 286 A.3d at 553 (citation modified). In context, it is clear that the term "classification" in Section 1-711(k) refers to classification into "classes and grades" for compensation purposes, because Section 1-711(k) exempts DCRB only from the CMPA's compensation policy. Nothing in Section 1-711(k) or D.C. Code §§ 1-611.01 to .21 refers to the placement of staff into different services. We conclude that the meaning of the term "classification" in

Section 1-711(k) is readily ascertainable and that Section 1-711(k) clearly does not give DCRB the authority to place employees into services contrary to the requirements of the CMPA.

Because the plain meaning of the relevant provisions of the CMPA unambiguously dictates that Ms. Sampson was a Senior Executive Attorney in the Legal Service, we are obliged to give those provisions their full effect. *See, e.g.*, *Yazam*, 310 A.3d at 623. Although the plain meaning of a statute may not be controlling "when there is a clearly expressed legislative intention to the contrary," *id.* (citation modified), Ms. Sampson has not identified any such clear legislative intention. Ms. Sampson notes only that the CMPA and Section 1-711 have been amended several times since the creation of DCRB and none of those amendments curtailed the authority conferred by Section 1-711(k). As we have explained, however, Section 1-711(k) does not conflict with or override the CMPA's requirements regarding the placement of employees into various services.

Fourth, Ms. Sampson argues that DCRB cannot now claim that Ms. Sampson was in the Legal Service after having treated her as a Career Service employee throughout her tenure and upon her termination. Ms. Sampson also argues that a number of D.C. agencies have treated their general counsels as Career Service employees. It appears to be undisputed that Ms. Sampson's personnel records and

removal letters reflected DCRB's erroneous belief that Ms. Sampson was a Career Service employee. DCRB also does not appear to dispute that at least some other independent agencies have described their general counsels as Career Service employees. Nevertheless, any mistaken characterization by DCRB of Ms. Sampson's status (or by other agencies as to the status of their general counsels) does not entitle Ms. Sampson to appeal her termination to OEA. DCRB had no authority to "override [the] statutory mandate" that placed Ms. Sampson in the Legal Service and made her an at-will employee. *Davis v. United States*, 306 A.3d 89, 109 (D.C. 2023) (concluding that agency delegation was unlawful because delegation exceeded authority granted by agency's enabling statute); *cf. Clayton v. District of Columbia* (*Clayton II*), 117 F. Supp. 3d 68, 75 (D.D.C. 2015) (concluding that CMPA required plaintiff to be employed at will and noting that D.C.'s original, erroneous classification of plaintiff as Career Service employee was "in contravention of D.C. law" and therefore any agreement to classify plaintiff as Career Service employee would be "unenforceable").

Fifth, Ms. Sampson argues that judicial estoppel prevents DCRB from asserting a position regarding Ms. Sampson's employment status that contradicts the position DCRB took in a separate litigation in D.C. Superior Court. *See Dennis v. Jackson*, 258 A.3d 860, 868, 869 (D.C. 2021) (explaining that judicial estoppel is "an equitable doctrine" that "prohibit[s] parties from deliberately changing positions

according to the exigencies of the moment") (citation modified). We decline to address Ms. Sampson's judicial-estoppel argument because Ms. Sampson did not raise the argument in the trial court. *See, e.g.*, *Nwaneri v. Quinn Emanuel Urquhart & Sullivan, LLP*, 250 A.3d 1079, 1082 (D.C. 2021) ("We ordinarily do not consider issues raised for the first time on appeal.") (citation modified). To the contrary, Ms. Sampson explicitly conceded in the trial court that DCRB could raise its challenge to OEA's jurisdiction for the first time in the trial court.

Finally, Ms. Sampson suggests that OEA had jurisdiction over her appeal because Ms. Sampson had a constitutional due-process right to be treated as a Career Service employee. We think it clear that Ms. Sampson had no such constitutional right. *See Clayton II*, 117 F. Supp. 3d at 75 (explaining that although D.C. "may have acted improperly" by erroneously categorizing plaintiff as Career Service employee, D.C. did not deny protected property interest by terminating plaintiff because plaintiff was actually at-will employee statutorily "ineligible" for employment protections).

In sum, the applicable statutes place Ms. Sampson in the Legal Service as a matter of law and dictate that her employment was at will. The trial court committed a clear, obvious, and unmistakable error of law by not giving effect to the statutory

text, which conclusively establishes that OEA does not have jurisdiction over Ms. Sampson's appeal.

### C. Motion to Strike

Finally, we deny Ms. Sampson's motion to strike portions of DCRB's reply brief. Ms. Sampson argues that DCRB's reply brief is inconsistent with this court's "longstanding policy . . . not to consider arguments raised for the first time in a reply brief." *Stockard v. Moss*, 706 A.2d 561, 566 (D.C. 1997). Specifically, Ms. Sampson objects to two arguments in the reply brief: (1) DCRB's reliance on a statutory provision, D.C. Code § 1-611.01, not mentioned in DCRB's opening brief; and (2) DCRB's argument that Ms. Sampson waived a judicial-estoppel defense. We see no basis to strike any part of the reply brief.

The two arguments that Ms. Sampson seeks to strike do not impermissibly raise new issues for this court to consider. Rather, the arguments directly respond to arguments Ms. Sampson made in her brief. *Cf. Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 312 n.5 (D.C. 1984) (explaining that appellant "clearly exceeded the permissible scope of the reply brief" by raising issues that "had not been addressed in [appellee's] brief"). DCRB cites D.C. Code § 1-611.01 in an effort to rebut Ms. Sampson's interpretation of D.C. Code § 1-711(k). DCRB's argument that Ms. Sampson waived a judicial-estoppel defense by not raising the defense in the trial

court permissibly responds to Ms. Sampson's raising of the defense for the first time in her brief in this court.

For the foregoing reasons, we deny Ms. Sampson's motion to strike portions of the reply brief, we reverse the order of the Superior Court, and we remand the case to the Superior Court with instructions to further remand the case to OEA for the dismissal of Ms. Sampson's appeal to OEA.

*So ordered.*