Hilton BURTON, Appellant,

v.

OFFICE OF EMPLOYEE APPEALS,
et al., Appellees,

and

Robin Hoey, Appellant,

v.

Office of Employee Appeals,
et al., Appellees.

Nos. 09–CV–1493, 10–CV–963.

District of Columbia Court of Appeals.

Argued Sept. 29, 2011.
Decided Nov. 3, 2011.

E. Scott Frison, Jr., Washington, DC, for appellant Hilton Burton.

J. Michael Hannon, Washington, DC, for appellant Robin Hoey.

Holly M. Johnson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellees.

Before WASHINGTON, Chief Judge, and GLICKMAN and FISHER, Associate Judges.

FISHER, Associate Judge:

Appellants, each of whom had worked for the Metropolitan Police Department for more than fifteen years, were reduced in rank from the position of Commander. They appealed to the Office of Employee Appeals (OEA), claiming that, as Career Service employees, they could not be demoted without cause. In separate decisions, the OEA held that even though appellants were Career Service employees, the Chief of Police had specific statutory authority to reduce their rank, even without cause. Judges of the Superior Court affirmed both decisions, as do we.[1]

## I. Factual and Procedural Background

### A. Appellant Hoey

Robin Hoey joined the Metropolitan Police Department (MPD) in 1985. Over the next nineteen years, he was progressively promoted to the positions of Lieutenant, Captain, Inspector, and, in 2004, to Commander of the Sixth District. There is no dispute that Mr. Hoey was hired as a Career Service employee and that he remains a Career Service employee.[2]

---

1. These appeals have not been formally consolidated, but, recognizing the similarity of the issues, this court ordered that they be argued on the same day, before the same division. We now decide both appeals in a single opinion.

2. D.C.Code § 1–608.01(d–2)(1) provides for both Career Service *promotions* and Excepted Service *appointments* to the position of Commander. Career Service employees are subject to, and protected by, the Comprehensive Merit Personnel Act (CMPA); they generally

On April 19, 2007, newly-appointed Chief of Police Cathy Lanier informed Commander Hoey that she was returning him to the rank of Captain and reassigning him to other duties. At no point has Chief Lanier suggested that Commander Hoey's work was inadequate; to the contrary, his most recent performance evaluations document that his work was highly regarded. However, the MPD claims that the Chief of Police has statutory authority to return any officer above the rank of Captain to that position, without cause.

Mr. Hoey appealed Chief Lanier's decision to the OEA, claiming that his demotion violated the Comprehensive Merit Personnel Act (CMPA) and, by extension, his property interest in his continued employment as a Commander. Senior Administrative Law Judge Joseph Lim held that, as a Career Service employee, Mr. Hoey could not be demoted to Captain without cause, and he ordered the MPD to reinstate Mr. Hoey to his former rank of Commander. On appeal by the MPD, the Board of the OEA vacated Judge Lim's decision, concluding that even though Mr. Hoey was a Career Service employee, the Chief of Police had authority under D.C.Code § 1–608.01(d–1) to return him to the position of Captain.[3] Mr. Hoey appealed to the Superior Court, which affirmed the Board's decision, and this appeal followed.

### B. Appellant Burton

The facts in *Burton v. OEA* are similar to those in *Hoey v. OEA* and we summarize them only briefly. Hilton Burton joined the MPD in 1990, attained the rank of Inspector in 2000, and was promoted to Commander in 2003. On January 22, 2008, Chief Lanier returned Mr. Burton to the rank of Inspector. Mr. Burton appealed his demotion to the OEA, claiming, like Mr. Hoey, that as a Career Service employee he could not be demoted without cause. Relying on the OEA Board's decision in *Hoey v. District of Columbia Metropolitan Police Dep't*, OEA Matter No. 1601–0074–07 (2008), Judge Lim granted the MPD's motion for summary judgment. The Superior Court affirmed.

## II. Legal Framework and Background

■■■■ "Although th[ese] appeal[s] come[ ] to us from the Superior Court, our scope of review is precisely the same as in administrative appeals that come to us directly." *Johnson v. District of Columbia Office of Employee Appeals*, 912 A.2d 1181, 1183 (D.C.2006) (quoting *Murchison v. District of Columbia Dep't of Public Works*, 813 A.2d 203, 205 (D.C.2002)) (internal quotation marks omitted). "[W]e must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law." *Settlemire v. District of Columbia Office of Employee Appeals*, 898 A.2d 902, 905 n. 4 (D.C.2006).

■■■■ Nevertheless, "[t]he construction of a statute raises a question of law which this court reviews *de novo*." *Leonard v. District of Columbia*, 794 A.2d 618, 625

---

cannot be fired without cause. D.C.Code §§ 1–608.01, –616.51, –616.52 (2001). By contrast, individuals in the Excepted Service are "at-will" employees without any job tenure or protection. D.C.Code §§ 1–609.01, – 609.05 (2001). Although the MPD initially contended before the Office of Employee Appeals that Commander Hoey was a member of the Excepted Service, it has not pursued that argument on appeal.

3. D.C.Code § 1–608.01(d–1) (2001) states that, "notwithstanding ... any other law or regulation, the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines."

(D.C.2002). In interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent. *Grayson v. AT & T Corp.*, 15 A.3d 219, 237 (D.C.2011) (en banc). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C.2010) (en banc) (quoting *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc)).

██ "The literal words of a statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C.2006) (quoting *Columbia Plaza Tenants' Ass'n v. Columbia Plaza L.P.*, 869 A.2d 329, 332 (D.C.2005)) (internal editing and quotation marks omitted). "The statutory meaning of a term must be derived from a consideration of the entire enactment against the backdrop of its policies and objectives." *Tenley & Cleveland Park Emergency Committee v. District of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331, 334–35 n. 10 (D.C.1988).

### III. Analysis

The CMPA established a merit-based system for selecting, evaluating, and retaining employees, *see* D.C.Code § 1–601.02(b) (2001); under this system, an employee in the Career Service generally cannot be fired, demoted, or suspended without cause. D.C.Code §§ 1–616.51, –616.52. The dispute in these cases centers on the meaning of D.C.Code § 1–608.01(d–1), which provides that:

> For members of the Metropolitan Police Department and notwithstanding § 1–632.03(1)(B) [4] or any other law or regulation, the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and *shall be returned to the rank of captain when the Mayor so determines.*

(Emphasis added.) It is uncontested that, absent this provision, Mr. Hoey and Mr. Burton could not have been reduced in rank without cause.

The interpretation of D.C.Code § 1–608.01(d–1), and its interplay with other provisions of the CMPA, raises a question of first impression in this court. In answering this question, we must focus on three independent issues: (1) whether § 1–608.01(d–1) applies to Career Service employees; (2) if so, whether § 1–608.01(d–1) applies to the position of Commander; and (3) whether applying § 1–608.01(d–1) would violate any constitutionally protected property interests. Because we conclude that § 1–608.01(d–1) provides the Mayor (or his delegee [5]) with explicit discretionary authority to return any officer above the rank of Captain to the rank of Captain, we hold that Mr. Hoey and Mr. Burton are not entitled to reinstatement or back pay.

### A. A Brief History of § 1–608.01(d–1)

Because the interpretation of § 1–608.01(d–1) raises a question of first impression in this court, a brief history of this provision and its relationship to the CMPA may shed some light on the issues before us. In 1978, when the CMPA was enacted, existing statutes provided the

---

4. Section 1–632.03(1)(B) was enacted as part of the CMPA. As pertinent here, it removed the Mayor's then-existing authority to return high-ranking police officials to the rank of Captain. This history is discussed in greater detail in Part III.A., *infra*.

5. In an order issued on May 9, 1997, the Mayor delegated his personnel authority under this provision to the Chief of Police. Mayor's Order 97–88, 44 D.C.Reg. 2959–60 (May 16, 1997). That delegation remains in effect.

Commissioner with authority to return certain high-ranking police officials to the rank of Captain. D.C.Code § 4–103 (1973).[6] The CMPA removed this authority with respect to officers hired after the CMPA went into effect. D.C.Code § 1–633.3(1)(B) (1981).

For the next twenty years, no statute authorized the Mayor or the Chief of Police to return police officials above Captain (and hired after the CMPA went into effect) to the rank of Captain without cause. Then, in June 2000, the Council of the District of Columbia enacted the Metropolitan Police Personnel Amendment Act of 2000, which added § 1–608.01(d–1) to the chapter creating the Career Service and inserted a nearly identical provision in § 1–633.3(1).[7] Though there was little discussion of the Act in the legislative history, the accompanying fiscal statement indicated that:

> This subtitle will have no negative fiscal impact and could have a positive impact due to the removal of administrative

costs involved in adverse action proceedings from demoting persons in positions of Inspector and above. Administrative costs include witness fees, staff overtime for investigative work, and materials and supplies expenses. Enactment of this section, therefore, creates a cost avoidance from expenditure activity associated with adverse litigation.

Bill 13–679 § 823 (Comm. Print May 19, 2000). The language adopted by the Council in 2000 was an almost exact copy of that found in D.C.Code § 4–104 (1981),[8] which, pursuant to § 1–633.3(1)(B), did not apply to officers hired after the CMPA's effective date. See note 4, *supra.*

Four years later, the Council made another revision to § 1–608.01, adding two new provisions immediately below (d–1).[9] Part of a larger bill enacted to "promote fair, efficient and transparent personnel policies and practices in the areas of promotions, discipline, and medical leave/limited duty," D.C. Council, Report on Bill 15–32 at 2 (Dec. 9, 2003), these provisions

---

**6.** The relevant portion of § 4–103 provided:

> That the assistant superintendents and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Commissioner so determines.

The reference to "assistant superintendents" was a holdover from an earlier era, when the police were commanded by a Major and Superintendent and supported by several Assistant Superintendents. *See* 24 ACTS OF CONGRESS AFFECTING THE DISTRICT OF COLUMBIA, 66TH CONG., 1ST AND 2ND SESSIONS 383 (May 19, 1919, to June 10, 1920). In the 1981 version of the Code, the term "assistant superintendents" was updated to "Assistant and Deputy Chiefs of Police." *See* D.C.Code § 4–104 (1981). The 1981 version also changed "Commissioner" to "Mayor" to reflect changes in the District's governance. *See id.* Similar authority had been granted to the District of Columbia's top officials since 1919.

**7.** This provision was later renumbered to § 1–632.03(c).

**8.** This provision is now found in § 5–105.05.

**9.** These provisions stated that:

> (1) The Chief of Police shall recommend to the Director of Personnel criteria for Career Service promotions and Excepted Service appointments to the positions of Inspector, Commander, and Assistant Chief of Police that address the areas of education, experience, physical fitness, and psychological fitness. The recommended criteria shall be the same for Career Service promotions and Excepted Service appointments to these positions. When establishing the criteria, the Chief of Police shall review national standards, such as the Commission on Accreditation for Law Enforcement Agencies.
> (2) All candidates for the positions of Inspector, Commander, and Assistant Chief of Police shall be of good standing with no disciplinary action pending or administered resulting in more than a 14–day suspension or termination within the past 3 years.

Bill 15–32 (Comm. Print Dec. 9, 2003); *see also* D.C.Code § 1–608.01(d–2).

were designed to address concerns about questionable appointments to high level positions and inadequate criteria for promotions within the MPD, *id.* at 9–11. Other sections of the bill addressed the disciplinary process, particularly delays in disciplining police officers, *id.* at 13–15, but these amendments did not affect § 1–608.01(d–1).

### B. Does § 1–608.01(d–1) Apply to Career Service Employees?

Appellants do not dispute, nor could they, that § 1–608.01(d–1) provides the Chief of Police with authority to return at least some Assistant Chiefs, Deputy Chiefs, and Inspectors to the level of Captain. Rather, Mr. Hoey argues that the term " 'notwithstanding' is intended to apply to the Excepted Service ... commanders, not the Career Service Commanders." [10] Mr. Burton similarly claims that § 1–608.01(d–1) is applicable only to members of the Excepted Service.

█ The language of § 1–608.01(d–1) provides no support for this argument. The provision does not state that it applies only to Excepted Service officers, nor that Career Service officers are exempted from its reach. Indeed, the terms "Excepted Service" and "Career Service" do not appear in the provision at all. Instead, the language is unrestricted; the plain meaning of the statutory language is that Career Service employees of the MPD are included within its reach.

Our conclusion is buttressed by the fact that the provision appears in the subchapter creating, and defining the rights of, the Career Service rather than the Excepted Service. *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008)

(noting that "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute") (internal quotation marks and citations omitted); *Cloutterbuck v. Cloutterbuck,* 556 A.2d 1082, 1084 (D.C.1989) (referring to title of statute in determining that the right to counsel conferred by it is confined to criminal proceedings). We can think of no reason why the Council would have placed this provision in the section dealing with Career Service employees if it had meant for it to apply only to Excepted Service employees.

It is true, as appellants note, that the provision immediately following § 1–608.01(d–1) provides two tracks for reaching the position of Commander: appointments to the Excepted Service and promotions within the Career Service. D.C.Code § 1–608.01(d–2). However, there is no support for their claim that subsection (d–2) limits the application of (d–1) to the Excepted Service or, alternatively, that (d–2) impliedly repealed (d–1) to the extent it applied to the Career Service. D.C.Code § 1–608.01(d–2) does not speak to the topic at issue in (d–1)–the authority of the Chief of Police to return high ranking officials to the position of Captain-but rather discusses the criteria for promotions or appointments to these ranks. Sections (d–1) and (d–2) are complementary, not conflicting, and thus (d–2) neither limits nor impliedly repeals the authority granted by (d–1). *See Leonard,* 794 A.2d at 626 ("A later enacted statute 'will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two.' ") (quoting *United States v. Fausto,* 484 U.S. 439, 452–53, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)).

10. Mr. Hoey also argues that this issue is not properly before us because the MPD did not raise it in the initial OEA proceeding and the Board of the OEA erred in considering it. We find no merit in this claim; the record indicates that the MPD raised this issue at all stages of the proceedings.

Mr. Burton also argues that § 1–608.01(d–1) is inapplicable to Career Service employees because it contradicts various municipal regulations that protect such employees from adverse actions without cause.[11] In this vein, he contends that the phrase "when the Mayor so determines" does not vest the Mayor or his delegee with unlimited discretionary authority, but rather permits the Mayor to create regulations that govern how an official may be demoted. According to Mr. Burton, the Mayor has already exercised this authority by promulgating various regulations that prohibit demotions of all Career Service employees without cause, and therefore the Chief of Police cannot return Commanders to lower-ranking positions contrary to those regulations.

Nothing in the language of § 1–608.01(d–1), though, requires the Mayor to promulgate regulations to implement the authority it confers. Moreover, the language of § 1–608.01(d–1) unambiguously provides that it applies to such employees "notwithstanding ... any other law or *regulation.*" (Emphasis added.) Thus, at a minimum, § 1–608.01 supersedes any conflicting regulations that were in place at the time the statute was enacted in 2000. *See George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 831 A.2d 921, 943 (D.C.2003) (noting that "the later [statute] supersedes the earlier [one]"). Since the regulations cited by Mr. Burton were promulgated in 1985, 32 D.C.Reg. 1857, 1894–96 (1985), they were superseded by the later enactment of § 1–608.01(d–1).

Appellants insist that this interpretation must be rejected because the legislature could not have intended for § 1–608.01(d–1) to undermine the strong protections granted to Career Service employees by the CMPA.[12] For example, Mr. Hoey forcefully argues that "[t]he single word 'notwithstanding' ... cannot serve to repeal the omnibus public policy of the District of Columbia" that protects Career Service employees. "Were the MPD's ... arguments to prevail," he asserts, "the Career Service status of all Commanders and Inspectors would be erased."

But D.C.Code § 1–608.01(d–1) does not erase all of the Career Service protections of officers within the MPD. It eliminates a single right—the right not to be reduced

---

11. Mr. Burton specifically cites 6–B DCMR §§ 833.2, 834.1, 836.1, 836.5, and 836.7 (1985). These provisions prohibit assigning "a Career Service appointee to a position with less rights and benefits ... unless the employee has waived the rights and benefits in writing," 6–B DCMR § 833.2; reducing "an employee's rights and benefits with respect to continued employment ... by promotion, demotion, or reassignment" unless a valid waiver is executed, 6–B DCMR § 834.1; or reassigning a Career Service employee to a position at a lower grade or with fewer rights or benefits, 6–B DCMR § 836.1. Also, a Career Service employee may not "voluntarily accept a lower-graded position" or "a position with lesser rights or benefits" unless a proper waiver is executed. 6–B DCMR §§ 836.6 to -.7. In addition, § 836.5 establishes the procedure for involuntarily demoting a Career Service employee:

An involuntary demotion of a Career Service employee shall be made by either of the following:
(a) By adverse action procedures in accordance with chapter 16 of these regulations; or
(b) By reduction-in-force procedures in accordance with chapter 24 of these regulations.

12. Mr. Burton also suggests that the protections of the CMPA supersede the authority provided to the Chief of Police by § 1–608.01(d–1) since the CMPA was enacted after the Commissioners first received such authority in 1919. We find no merit in this argument since the Council of the District of Columbia enacted § 1–608.01(d–1) in 2000, thereby reinstating the authority the CMPA originally extinguished. See *supra* Section III.A.

in rank without cause—for a small set of high ranking officers. Moreover, it specifies that no officer may be reduced, without cause, below the level of Captain. No other Career Service rights are affected. Thus, as the Board of the OEA concluded, Mr. Hoey's "Career Service status would have given him certain legal rights had the Chief chosen to terminate him or demote him to a rank below that of captain." [13]

Moreover, it is unclear precisely what meaning appellants would have us ascribe to the term "notwithstanding." As Judge Johnson observed below, it is well-established that "the use of such a 'notwithstanding' clause *clearly* signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of *any other section.*" *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) (emphasis added). In addition, the interpretation urged by appellants—that § 1–608.01(d–1) applies only to the Excepted Service—would render the provision entirely superfluous. Under D.C.Code § 1–609.05 (2001), Excepted Service employees "do not have any job tenure or protection." As a result, the Chief of Police does not need the authority provided by § 1–608.01(d–1) to fire or demote such employees without cause.

Mr. Hoey also argues in his reply brief that the Board's interpretation of § 1–608.01(d–1) was erroneous because it applied the provision to *all* high-ranking police officials, including Excepted Service employees, thereby "grant[ing] rights to *appointed* Excepted Service officials [and] rendering them on equal footing with the Career Service." [14] But under Mr. Hoey's new argument, § 1–608.01(d–1) applies to *neither* Career Service employees *nor* Excepted Service employees. In short, it has no meaning at all.

We are not persuaded by appellants' arguments. To the contrary, as explained above, the plain language of (d–1) and its placement within the statutory scheme indicate that it applies to certain high ranking Career Service employees of the MPD. This interpretation is also supported by the Council's Committee report, which noted that the provision "could have a positive [fiscal] impact due to the removal of administrative costs involved in adverse action proceedings from demoting persons in positions of Inspector and above." Bill 13–679 § 823 (Comm. Print May 19, 2000). Since Excepted Service employees have no right to contest their demotions through adverse action proceedings, this statement only makes sense if § 1–608.01(d–1) was meant to apply to the Career Service. [15]

13. For this reason, Mr. Hoey's related argument, that § 1–608.01(d–1) contravenes § 1–609.03(a)(2) because it would allow the Chief of Police to exceed the number of Excepted Service officers permitted under that provision, also fails. D.C.Code § 1–608.01(d–1) does not convert any Career Service employees to Excepted Service employees, but simply helps define the Career Service protection provided to high ranking officials of the MPD.

14. We are not certain this is a fair interpretation of the Board's decision. In any event, since neither Mr. Hoey nor Mr. Burton is a member of the Excepted Service, the question of whether § 1–608.01(d–1) also applies to Excepted Service employees is not properly before us, and we express no opinion about

the language in the Board's decision to which Mr. Hoey refers.

15. After its decisions in *Hoey* and *Burton*, the OEA decided *Keegan v. District of Columbia Metropolitan Police Department*, OEA Matter No. 1601–0044–08 (2010), which also concerned the rights of a high-ranking Career Service police official who had been returned to the rank of Captain. In that case, the Board stated that it was "inclined to believe that Employee retained his rights as a Career Service employee" and that he therefore could not have been demoted without cause. Appellants urge this court to adopt the Board's reasoning from *Keegan* or to remand these cases so that the Board may enter new

## C. Does D.C.Code § 1–608.01(d–1) Apply to Commanders?

Appellant Hoey also contends that § 1–608.01(d–1) does not apply to the position of Commander, noting that "no statute at the time of Hoey's demotion authorized a discretionary demotion of a Commander to Captain. Rather [the provision in question] continues to exclude Commander from the list of positions which may be returned to Captain." [16]

The language of § 1–608.01(d–1) is nearly identical to, and likely copied from, D.C.Code § 5–105.01,[17] a provision with historical roots going back to 1919.[18] The titles listed have changed over the years as positions were renamed and new ranks were added, but the provision appears to have consistently covered those positions above the rank of Captain. Thus, it is fair to conclude that the Council intended § 1–608.01(d–1) to apply to the same levels of command as does § 5–105.01, and to include the more modern title of Commander.

Indeed, the Council adopted § 1–608.01(d–1) in 2000, at a time when the title of Deputy Chief had already been phased out.[19] However, under existing MPD policy, District Commanders were "of the rank of Deputy Chief." MPD General Order 101.9 (April 29, 1979). Since there were no Deputy Chiefs at the time § 1–608.01(d–1) was adopted, the term "Deputy Chiefs" must have referred to Commanders. This interpretation is also consistent with the Committee Report, which stated that the provision would apply to "persons in positions of Inspector and above." Bill 13–679 § 823 (Comm. Print May 19, 2000).

It should have been no surprise to appellants that Commanders could be returned to the rank of Captain without cause. In addition to § 1–608.01(d–1) and the aforementioned MPD policy, regulations in place before either appellant was promoted above the rank of Captain provided that "Assistant Chiefs, Commanders, and Inspectors ... serve at the pleasure of the Chief of Police. As such they may be

decisions consistent with *Keegan.* We reject that invitation for multiple reasons. First, the decisions in *Hoey* and *Burton* are the only ones currently before us. Second, the decision in *Keegan* seems to reflect the Board's belief that it was bound by two decisions of the United States District Court for the District of Columbia. *See Hoey v. District of Columbia,* 540 F.Supp.2d 218 (D.D.C. 2008) (dismissing suit for failure to exhaust administrative remedies); *Fonville v. District of Columbia,* 448 F.Supp.2d 21 (D.D.C.2006) (denying defendant's motion for summary judgment). We disagree with that conclusion and further note that those cases did not squarely address the precise question at issue here: whether D.C.Code § 1–608.01(d–1) provides the Chief of Police with specific statutory authority to return Career Service employees to the rank of Captain without cause. In any event, those decisions do not bind us. Finally, we are presented here with a question of statutory construction, as to which we exercise *de novo* review.

16. The relevant portion of § 1–608.01(d–1) provides that "the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines."

17. The relevant portion of that provision states:

The Mayor of said District shall appoint to office, assign to such duty or duties as he may prescribe, and promote all officers and members of said Metropolitan Police force; ... provided further, that the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines....
D.C.Code § 5–105.01 (2001).

18. See *supra* Part III.A.

19. The position of Deputy Chief was phased out in 1997, when the last three Deputy Chiefs retired.

■■■■■■■■■■■■■■■■■■

returned to their previous rank/position as the Chief of Police may determine." 6–B DCMR § 872.5 (1998).[20]

It is uncontested that Assistant Chiefs outrank Commanders, who, in turn, outrank Inspectors. *See* MPD General Order 101.9 (April 29, 1979) (listing the ranks of police officers and defining their responsibilities). It would have been illogical for the Council to provide the Mayor or his delegee with the authority to return Assistant Chiefs and Inspectors, the ranks immediately above and below Commanders, to the rank of Captain, but not to grant that same authority with respect to Commanders. The better interpretation is that § 1–608.01(d–1) applies alike to Inspectors, Commanders, and Assistant Chiefs of Police.

### D. Do Appellants Have a Constitutionally–Protected Property Interest?

Finally, appellants argue that it is unconstitutional to apply § 1–608.01(d–1) to members of the Career Service because doing so would deprive them of their property interests in the position of Commander without due process of law. Further, relying on a municipal regulation[21] and previous decisions of this court, appellants contend that a Career Service employee cannot lose his CMPA protections unless he is aware that he is doing so and signs a waiver to that effect.

■■■■ "In order to invoke the Fifth Amendment's procedural due process protections, an employee must show that a protected liberty or property interest is implicated." *Leonard,* 794 A.2d at 623. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Consequently, "[t]o trigger due process protection in the area of public employment, an employee must 'have a legitimate claim of entitlement to [the right or benefit].'" *Leonard,* 794 A.2d at 624 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701).

■■■■ If the continuation of an employment benefit rests on the discretion of the employer, an employee cannot have a "legitimate claim of entitlement to it." *Id.* Therefore, because § 1–608.01(d–1) provides the Chief of Police with discretionary authority to return any Commander to the rank of Captain or Inspector, appellants had no legitimate claim or entitlement to continue in, or receive the benefits of, the position of Commander. They therefore had no property interest in the position, and their constitutional rights have not been abridged.

**20.** This regulation was amended in both 2002 and 2008, though each version continued to provide the Chief of Police with the discretionary authority to return Commanders to the rank of Captain. 49 D.C.Reg. 1859 (2002), 55 D.C.Reg. 21 (2008). Some of the language in the 1998 and 2002 versions of the regulation may have contributed to the confusion about whether Commanders were Career Service or Excepted Service employees. Nevertheless, the language of § 872.5, which partially tracks that of D.C.Code § 1–608.01(d–

1), should have indicated to appellants that the MPD was applying the statutory authority granted by (d–1) to Commanders.

**21.** Appellants specifically cite 6–B DCMR § 833.2 (1985), which provides that "[a]ny internal placement of a Career Service appointee to a position with less rights and benefits shall not be effective unless the employee has waived the rights and benefits in writing...."

MPD was not required to have appellants sign a waiver of their CMPA rights and benefits when they were promoted to Commander because their promotions did not result in the loss of any CMPA rights or benefits. To the contrary, both Mr. Hoey and Mr. Burton benefitted from the increased salary and prestige that accompanied their promotions to Commander. It is true, of course, that they lost these additional advantages when they were returned to their previous ranks. However, these incremental advantages were not protected by the CMPA since they were tied to a position from which appellants could be removed at the Chief's discretion.

## IV.  Conclusion

In sum, neither Mr. Hoey nor Mr. Burton is entitled to reinstatement or to back pay because § 1–608.01(d–1) provides the Chief of Police with discretionary authority to return Career Service Commanders to the rank of Captain or Inspector. The judgment of the OEA Board is hereby

*Affirmed.*