*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-FM-28

IN RE NATHAN EDMONDS, JR., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(MHE-1363-09)

(Hon. Carol A. Dalton, Trial Judge)

(Argued February 4, 2014                          Decided July 31, 2014)

*David Carr* for appellant.

*Stacey L. Anderson*, Senior Assistant Attorney General for the District of Columbia, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Mursky*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and STEADMAN, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  In this case, we are asked to decide an issue of first impression:  whether "extend[ing] the period of commitment pending resolution" of a petition to renew that commitment under D.C. Code § 21-545.01 (f) (2004 Supp.) bears any role on the renewal petition for recommitment.  In other words, we must determine whether an individual, committed for mental health reasons, can be recommitted without extending his or

her existing commitment when it expires prior to resolving the renewal petition for recommitment. In this case, appellant Nathan Edmonds, Jr. seeks review of the trial court's order denying his motion to dismiss the District of Columbia Commission on Mental Health's ("the Mental Health Commission") order renewing his civil commitment ("recommitment order") for one additional year. Edmonds contends that the trial court, as well as the Mental Health Commission, lacked jurisdiction to renew his commitment once his existing one-year commitment expired prior to the recommitment proceedings. Specifically, Edmonds claims that § 21-545.01 (f) required the trial court to extend his existing commitment prior to its one-year expiration date as a prerequisite to considering the petition for renewal of his recommitment. According to Edmonds, the trial court's underlying failure to extend his existing commitment prior to its one-year expiration date deprived the Mental Health Commission of the authority to hear his renewal petition. Therefore, Edmonds contends, the renewal petition should have been dismissed.[1]

---

[1] Although Edmonds properly appealed the trial court's recommitment order, his argument on appeal centers on whether his motion to dismiss the renewal petition, filed before the Mental Health Commission in March 2012, see *infra*, should have been granted. Consequently, we review the trial court's order on that basis, and only refer to the motion to dismiss the renewal petition going forward.

The District of Columbia claims that the trial court did not err when it denied Edmonds' motion to dismiss his renewal petition because § 21-545.01 (f) does not make extending an individual's existing commitment a prerequisite for hearing and deciding a valid renewal petition.  According to the District, because the Department of Mental Health ("DMH") timely filed Edmonds' renewal petition under D.C. Code § 21-545.01 (a), and the Mental Health Commission set a "prompt" hearing date for Edmonds' recommitment proceedings, as required under D.C. Code § 21-545.01 (c), Edmonds' renewal petition was valid regardless of whether the Mental Health Commission, or the trial court, extended his existing commitment prior to disposing of the renewal petition.

Construction of D.C. Code § 21-545.01, and its applicability to a committed individual whom the District seeks to recommit, is a matter of statutory interpretation.  For the reasons discussed below, we conclude that the District's interpretation of the statute is reasonable.  Accordingly, because D.C. Code § 21-545.01 (a) and (c) are independent of § 21-545.01 (f), a timely filed renewal petition, for which a "prompt" hearing date is set, is not dependent on extending the committed individual's existing commitment under § 21-545.01 (f).

## I.  Factual Background

Edmonds was originally admitted to DMH's Comprehensive Psychiatric Emergency Program ("CPEP") on an emergency basis on December 29, 2009.[2] DMH subsequently filed a timely petition seeking an order for Edmonds' continued hospitalization for an additional seven days, which was granted.[3]  On January 5, 2010, DMH filed a petition with the Mental Health Commission,[4] pursuant to D.C. Code § 21-541 (2004 Supp.), seeking Edmonds' commitment for mental health treatment for one year because Edmonds was mentally ill, and as a result of such illness, was likely to injure himself or another if not committed.  The Honorable Joan Goldfrank, a magistrate judge and member of the Mental Health Commission, agreed with DMH and granted the petition following a hearing; she subsequently recommended in a report to the Superior Court that it commit

---

[2] *See* D.C. Code §§ 21-521 (2003 Supp.), 21-522 (2008 Supp.).

[3] *See* D.C. Code § 21-524 (2003 Supp.).

[4] Under D.C. Code § 11-1101 (a) (14) (2002 Supp.), the Superior Court has jurisdiction "over proceedings . . . relating to the commitment of the mentally ill." The Mental Health Commission, a branch of the Superior Court, is the designated body for examining alleged mentally ill persons and making reports and recommendations to the Superior Court based on its assessments.  *See* D.C. Code § 21-503 (a) (2004 Supp.).

Edmonds on an outpatient basis for one year.[5] In response, Edmonds invoked his right to a jury trial.[6]

Following a jury trial, in which Edmonds was represented by trial counsel, Edmonds was found mentally ill and likely to injure himself or others under D.C. Code § 21-544. The Honorable Laura Cordero, who presided over the jury trial, entered an order committing Edmonds for outpatient mental health treatment for one year on September 30, 2010, which was amended and "signed *nunc pro tunc* to September 30, 2010," on October 13, 2010. Edmonds appealed that order to this court, and we affirmed in an unpublished decision. *See In re Edmonds*, No. 10-FM-1372, Mem. Op. & J. (D.C. April 26, 2012).

On July 29, 2011, sixty-six days prior to the expiration of Edmonds' existing one-year commitment, DMH filed a renewal petition to recommit Edmonds for one additional year, pursuant to D.C. Code § 21-545.01 (a). The Mental Health Commission set a hearing date on the renewal petition ("renewal petition hearing") for October 11, 2011, beyond the September 30, 2011 expiration date of Edmonds' existing one-year commitment. DMH did not move to extend Edmonds'

---

[5] *See* D.C. Code §§ 21-542, -544 (2003 Supp.).

[6] *See* D.C. Code § 21-545 (a) (2004 Supp.).

commitment.[7] Edmonds did not object to the renewal petition hearing date, and instead requested a number of continuances of the hearing on October 13, 2011, December 5, 2011, January 18, 2012, and March 5, 2012, respectively, for varying reasons.[8] Along with his March 5, 2012 motion for a continuance, Edmonds filed a motion to dismiss DMH's renewal petition "on the ground that his one-year commitment . . . expired while the renewal petition remained pending and no extension was requested by the government as [D.C. Code § 21-545.01 (f)] permits [for 'good cause' shown]." The Mental Health Commission granted all of Edmonds' continuances and directed DMH to file a response to his motion to dismiss. DMH asserted in its response that because the Mental Health Commission granted all of the continuances at Edmonds' request, Edmonds could not now rely on § 21-545.01 (f) to claim a failure by the court to extend his period of commitment while the renewal petition was pending.

---

[7] The record suggests that at this point the case was transferred from Judge Cordero to Judge Goldfrank of the Mental Health Commission.

[8] The first continuance (October 2011) was requested to allow counsel to obtain certain medical records, the second (December 2011) to allow counsel to research whether DMH failed to timely comply with a requirement to extend his commitment, and the third (January 2012) to allow counsel to file a motion to dismiss the renewal petition on a statutory basis.

The Mental Health Commission denied Edmonds' motion to dismiss the renewal petition on March 27, 2012, finding that: "Petitioner filed a [p]etition for [r]ecommitment *in a timely manner*. . . . The Mental Health Commission rescheduled the hearing on the [p]etition on four occasions at [Edmonds'] request. The good cause to extend the period of commitment was [Edmonds'] request for continuance." Edmonds subsequently requested a fifth and sixth continuance on May 14, 2012, and June 21, 2012. On August 16, 2012, the Mental Health Commission held a hearing on Edmonds' renewal petition.[9] The Mental Health Commission made a series of factual findings, leading it to conclude that Edmonds suffered from schizoaffective disorder and experienced grandiose and paranoid delusions for ten years, failed to comply with his prescribed treatment by not taking medication to control his symptoms, and was not likely to participate in treatment if he was not committed. As a result, the Mental Health Commission found that further commitment was warranted, and it renewed Edmonds' commitment for one additional year effective August 17, 2012.[10]

---

[9] Edmonds was hospitalized four times between July 2011 and April 2012, during which DMH sought revocation of his outpatient status pursuant to D.C. Code § 21-548 (2003 Supp.).

[10] *See* D.C. Code § 21-545.01 (e). Edmonds' commitment was renewed a second time on October 15, 2013, this time for inpatient treatment for one year. Edmonds' second recommitment order is not before this court.

Edmonds subsequently appealed the Mental Health Commission's recommitment order to the Superior Court on a number of bases, one of which is relevant to this appeal: "[H]is March 5, 2012, 'Motion to Dismiss Commitment Petition' should not have been denied[.]" The Honorable Carol A. Dalton affirmed the Mental Health Commission's order on the merits and found that, on the question of whether the Mental Health Commission properly denied Edmonds' prior motion to dismiss the renewal petition under D.C. Code § 21-545.01, "granting . . . [Edmonds'] requests for continuances did not cause the . . . commitment to expire as the government had no duty to assert good cause to extend the period of commitment when [Edmonds] requested multiple continuances."

## II.    Discussion

Edmonds claims that the trial court erred in denying his motion to dismiss the renewal petition because D.C. Code § 21-545.01 (f) requires "the [c]ourt, . . . for good cause shown, [to] extend the period of commitment pending resolution of the renewal petition" once the existing order of commitment expires. According to Edmonds, the failure by the trial court to expressly extend his existing commitment, when the Mental Health Commission set his renewal petition hearing

date eleven days after his existing commitment expired, deprived the Mental Health Commission of its authority to resolve the pending renewal petition. He contends that as a result, the renewal petition and subsequent recommitment proceedings were void ab initio.[11] We find his arguments unpersuasive.

We review questions of statutory construction, which involve "clear question[s] of law," on a *de novo* basis. *Bank of Am., N.A. v. Griffin*, 2 A.3d 1070, 1072 (D.C. 2010) (citing *District of Columbia v. Morrissey*, 668 A.2d 792, 796 (D.C. 1995)). "The primary and general rule of statutory construction is that the

_____

[11] Because the recommitment order on appeal has expired and been superseded by the October 15, 2013 recommitment order, see *supra* note 10, which is not before this court (and to which appellant did not object), it reasonably might be asked whether this appeal should be dismissed as moot. As we have said, "once a new order determining the status of a committed mental health patient is in effect, it supersedes any prior order on the same matter and renders moot an appeal from the prior order, unless there are collateral effects from the prior order resulting in prejudice to the patient." *In re Smith*, 880 A.2d 269, 275–76 (D.C. 2005). But although we harbor some doubt on the question, we are not prepared to say that there is "no possibility" of collateral legal consequences for appellant flowing from the recommitment determination now on appeal to us. *In re Ballay*, 157 U.S. App. D.C. 59, 62–63, 482 F.2d 648, 651–52 (1973) (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968)). This jurisdiction has recognized that involuntary civil commitment can have continuing collateral consequences for the affected individual that should be dispelled if the commitment was unlawful. *See In re Morris*, 482 A.2d 369, 371–72 & n.4 (D.C. 1984); *In re Curry*, 152 U.S. App. D.C. 220, 223, 470 F.2d 368, 371 (1972); *Ballay*, 157 U.S. App. D.C. at 62–63, 482 F.2d at 652. For example, a civil commitment order, even if it is only one in a series (like the order under review in the present case), may be adduced as evidence in a subsequent proceeding for civil commitment or as part of an attack on the credibility, character, or capacity of a trial witness.

intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (citation omitted). "When statutory language is unambiguous, we are required to give effect to its plain meaning." *Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 474 (D.C. 2012) (citation omitted). "But our focus cannot be too narrow, for the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but also by considering the specific context in which that language is used, and the broader context of the statute as a whole." *O'Rourke v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012) (citation, brackets, and internal quotation marks omitted).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* (citation omitted). "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Id.* (citation omitted). Moreover, the literal language of the statute is "not the sole index to legislative intent," but instead should be read "in . . . light of the statute taken as a whole" and "given a sensible construction and one that would not work an obvious injustice." *Burton v. Office*

*of Emp. Appeals*, 30 A.3d 789, 792 (D.C. 2011) (citation and internal quotation marks omitted).

Applying these considerations here, we first discuss what D.C. Code § 21-545.01 (a) and (c) require for filing a valid renewal petition and commencing recommitment proceedings in order to determine whether D.C. Code § 21-545.01 (f) impacts a renewal petition.[12] In this regard, D.C. Code

---

[12] Because Edmonds challenges whether the *renewal petition* was valid, we necessarily must analyze § 21-545.01 (f) within its "context and with a view to [its] place in the overall statutory scheme" in order to best determine whether extending, or failing to extend, an individual's commitment under § 21-545.01 (f) is intended to affect and subsequently void a renewal petition and the accompanying recommitment process. *See O'Rourke*, *supra*, 46 A.3d at 384 (considering related statutory provisions in interpreting a separate provision under the Retirement and Disability Act).

For example, in *O'Rourke*, we were asked to interpret the term "member" as that term applied to a police officer's eligibility for disability benefits under D.C. Code §§ 5-709 & 5-710 (2008 Repl.). 46 A.3d at 384. Specifically, we had to determine whether an officer's termination from employment rendered him ineligible for disability benefits when that officer was terminated after being recommended for retirement on disability to the Retirement and Relief Board ("the Board") but prior to the Board's final eligibility determination. *Id.* The Board found such termination rendered the officer ineligible for retirement on disability. *Id.* We determined that the Board's interpretation of "member," which would have limited that term only to *active* members as of the time the Board rendered its decision on eligibility, was unreasonable because it ran contrary to the broader statutory framework and the humanitarian and remedial policy of the Act. *Id.* at 391. In reaching that conclusion, we considered the broader statutory framework, given that the "immediate statutory environment surrounding [those] two sections [was] inconclusive" and the term "member" was used inconsistently to include

(continued…)

§ 21-545.01 (a) states: "At least 60 days prior to the expiration of an order of commitment . . . the chief clinical officer of . . . [DMH] may petition the Mental Health Commission for a renewal of the order of commitment for that person." D.C. Code § 21-545.01 (c) provides: "The Mental Health Commission shall promptly examine a person for whom a petition is filed under subsection (a) . . . and, thereafter promptly hold a hearing on the issue of the person's mental illness and whether, as a result . . . the person is likely to injure himself or other persons if not committed." "Promptly" is not defined or contained to a specific time period under § 21-545.01. At oral argument, however, the District assured this court that in most cases, its practice, as well as that of the Mental Health Commission, is to set a hearing date on the renewal petition within the sixty days between the time the renewal petition is filed and the expiration of the existing commitment.

Despite what seems to be the usual practice of setting most renewal petition hearing dates within the sixty day time period between filing the renewal petition

---

(…continued)

former and current members. *Id.* at 385. We took particular note of how the Board's interpretation of the disability retirement provisions would, for example, run amok of other related provisions, including D.C. Code § 5-712 (b) (2008 Repl.), which allows the Mayor to retire any member of the force who reaches the age of sixty, thus suggesting that any officer eligible for retirement would be precluded from benefits if his retirement was compelled by the Mayor prior to the Board's final eligibility determination — a "perverse or incongruous" result. *Id.* at 386–87.

and expiration of the existing commitment, D.C. Code § 21-545.01 (f) anticipates situations where a hearing on a renewal petition may be set beyond the expiration of the existing one-year commitment because it provides: "If a petition for a renewal of an order of commitment is pending at the expiration of the commitment period ["commitment"] ordered under section 21-545 or this section, the [c]ourt *may*, for good cause shown, extend the period of commitment pending resolution of the renewal petition." (Emphasis added). In reviewing § 21-545.01 (f)'s order within the overarching statutory framework as we must do, see *supra* note 12, we are convinced that extending an existing commitment is not a prerequisite for the Mental Health Commission's hearing and disposing of a renewal petition because § 21-545.01 (a) and (c) deal with "renewal of the order of commitment," i.e., *recommitment*, while § 21-545.01 (f) focuses on extension of the *existing* commitment. In essence, only § 21-545.01 (a) and (c) set forth any hard and fast requirements for initiating a renewal petition and the subsequent recommitment proceedings. Consequently, we agree with the District that § 21-545.01 (a) and (c) are independent of § 21-545.01 (f) under D.C. Code § 21-545.01.

Because D.C. Code § 21-545.01 (a) and (c) are separate from § 21-545.01 (f), any failure to extend an individual's existing commitment while the renewal petition is pending may affect the Mental Health Commission or the

trial court's ability to continue to involuntarily commit that individual prior to the Mental Health Commission's hearing on the renewal petition. Significantly, however, the failure to extend the existing commitment would have no bearing on the renewal petition and the *recommitment* process so long as DMH and the Mental Health Commission complied with § 21-545.01 (a) and (c). We think this interpretation is in accord with having § 21-545.01 (a) and (c) serve as checks on the renewal petition and recommitment process while allowing § 21-545.01 (f) to ensure that extensions of existing commitments are granted on a discretionary basis — ideally, only when needed. Moreover, we note that immediately following § 21-545.01 (a) and (c) are § 21-545.01 (d) and (e), which specifically discuss what actions the Mental Health Commission should take upon *completing* the hearing on the renewal petition and conclusively *deciding* whether the individual is "mentally ill" or not.[13] *See O'Rourke*, *supra*, 46 A.3d at 383 and *supra* note 12.

---

[13] Under D.C. Code § 21-545.01 (d):

> If the [Mental Health] Commission finds, after a hearing . . . that the person with respect to whom the hearing was held is no longer mentally ill, or is not mentally ill to the extent that the person is likely to injure himself or other[s] if not committed, the Commission shall immediately order the termination of the commitment and notify the [c]ourt of that fact in writing.

On the other hand, if the Mental Health Commission concludes that the person is "mentally ill to the extent that the person is likely to injure himself or others if not

(continued…)

Accordingly, only those subsections that precede the subsections prescribing the actions the Mental Health Commission should take *after* coming to a final determination regarding the mental health of the individual that DMH seeks to recommit through its renewal petition would operate as necessary prerequisites for a valid renewal petition. *See O'Rourke*, *supra*, 46 A.3d at 383 (recognizing that a statute should be read as "a symmetrical and coherent regulatory scheme" where "all [the] parts [fit] into an harmonious whole").

Applying the foregoing considerations here, in this case, DMH filed Edmonds' renewal petition for an additional year of commitment on July 29, 2011, sixty-six days prior to the expiration of appellant's one-year commitment, in compliance with D.C. Code § 21-545.01 (a). The Mental Health Commission then set its hearing date on Edmonds' renewal petition for October 11, 2011, which we conclude is sufficiently close in time to the renewal petition's filing to meet the requirement that the hearing be held "promptly" under § 21-545.01 (c). The Mental Health Commission subsequently examined Edmonds, pursuant to § 21-545.01 (c), and ultimately found him to be mentally ill and likely to injure

---

(…continued)
committed," then under D.C. Code § 21-545.01 (e), "[it] shall order the renewal of the commitment of the person for an additional term not to exceed one year and shall promptly report that fact, in writing, to the [c]ourt."

himself or others, warranting his recommitment. Consequently, both DMH and the Mental Health Commission complied with the necessary requirements for filing and resolving Edmonds' renewal petition. Although the Mental Health Commission failed to extend Edmonds' commitment when it set the hearing date after his existing commitment expired, placing Edmonds squarely within D.C. Code § 21-545.01 (f)'s purview, we hold that because § 21-545.01 (a) and (c) are independent from § 21-545.01 (f), the failure to extend Edmonds' existing commitment had no bearing on his renewal petition and recommitment process.

## III.   Conclusion

For the foregoing reasons, because DMH and the Mental Health Commission complied with the requirements under § 21-545.01 (a) and (c), Edmonds' renewal petition and his subsequent recommitment process were valid. Accordingly, the judgment of the trial court is hereby affirmed.

*So ordered.*